Joyce Marie WICKEN, as Trustee for the Next-of-Kin of Donald Leroy Wicken, Respondent,

Eleanor Jarvi, as Trustee for the Next-of-Kin of Wiljo Alvar Jarvi, Respondent,

v.

Winston MORRIS, Defendant,

Ronald Fields, Defendant (C9–93–1048), Appellant (C7–93–1159),

Nitrochem, Inc., a foreign corp., Appellant (C9–93–1048), Respondent (C7–93–1159).

Nos. C9–93–1048, C7–93–1159.

Court of Appeals of Minnesota.

Jan. 11, 1994.

Review Granted March 15, 1994.

Robert J. Terhaar, Thomas F. Ascher, Cosgrove, Flynn, Gaskins & O'Connor, Minneapolis, for Ronald Fields, defendant (C9–93–1048), appellant (C7–93–1159).

Allen W. Hinderaker, David H. Wright, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for Nitrochem, Inc., appellant (C9–93–1048), respondent (C7–93–1159).

Edward J. Matonich, David A. Arndt, Matonich & Persson, Chartered, Hibbing, for Joyce Marie Wicken, etc.

Thomas R. Thibodeau, Mark A. Fredrickson, Johnson, Killen, Thibodeau & Seiler, Duluth, for Eleanor Jarvi, etc.

Considered and decided by LANSING, P.J. and PARKER and NORTON, JJ.

## OPINION

LANSING, Judge.

A 1989 explosion at a Nitrochem Energy Corporation plant in Biwabik, Minnesota caused the deaths of two employees. The decedents' wives brought a products liability action against Nitrochem and a negligence action against Ronald Fields, the manager of the Biwabik plant. The district court denied Fields' motion for summary judgment and Nitrochem's motion to dismiss for lack of personal jurisdiction. This court granted Fields' petition for discretionary review and consolidated Nitrochem's and Fields' appeals.

## FACTS

Nitrochem Inc. (Nitrochem) is a Canadian corporation headquartered in Montreal, Quebec. Nitrochem owns Nitrochem Corporation, which in turn owns Nitrochem Energy Corporation (NEC). NEC is headquartered in Allentown, Pennsylvania and formerly owned the Biwabik plant. NEC sold its operations, including the Biwabik plant, to another company before this lawsuit was commenced. After this sale, NEC no longer had a presence in Minnesota.

Nitrochem and NEC carried on separate businesses. Nitrochem manufactures several products, including ammonium nitrate. NEC manufactured explosive materials for use in the mining industry, including a product called MS–80. Ammonium nitrate is the main ingredient in MS–80.

Although Nitrochem did not sell ammonium nitrate directly to NEC because of the high costs associated with shipping ammonium nitrate long distances, it did arrange for the shipment of ammonium nitrate to NEC from another company. Nitrochem also oversaw the NEC operations in Biwabik. Nitrochem officials visited the plant, monitored operations and profits, and provided technical advice.

During its operation in Minnesota, NEC employed Wiljo Jarvi and Donald Wicken. Both men died as the result of a November 3, 1989 explosion at the NEC plant in Biwabik. Wicken died instantly. Jarvi died more than one year later, in February 1991. The explosion occurred as Jarvi and Wicken were burning the explosive substance MS–80 to dispose of it.

The MS–80 Jarvi and Wicken were burning consisted of a substantial amount of MS–80 that was returned to the Biwabik plant because it would not detonate. Although NEC at first recycled the reject material, NEC quit recycling the material when it was no longer feasible, and the material was simply stored on the ground. This storage method posed problems, and in August 1989, a Nobel Insurance Company representative gave the Biwabik plant ninety days to deal with the storage problem for the off-spec product. Fields indicated the plant would do its best to deal with the problem by the first of the year.

Fields decided to burn the off-spec product and contacted the DNR for a burning permit. Jarvi and Wicken submitted evidence that supports their factual allegations that Fields provided false information to the DNR forester in order to obtain the permit.

## ISSUES

I. Should a nonresident parent corporation's contacts with a forum state subsidiary corporation be considered in evaluating whether personal jurisdiction exists as to the nonresident parent corporation?

II. Did Ronald Fields breach a personal duty owed to his co-employees?

## ANALYSIS

### I

■■■ Minnesota's long-arm statute extends jurisdiction as far as the Due Process Clause of the United States Constitution allows. Minn.Stat. § 543.19 (1992); *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn.1992). Generally, if the personal jurisdiction requirements of the federal constitution are met, the requirements of the state long-arm jurisdiction are also met. *Valspar*, 495 N.W.2d at 411.

■■■ A court can constitutionally exercise jurisdiction when the nonresident defendant has "minimum contacts with [the forum]

such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Jurisdiction is appropriate when a "defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The defendant reasonably must have anticipated being haled into the state's courts. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

In *International Shoe,* the United States Supreme Court dispensed with the notion of presence within a state as a test for personal jurisdiction; instead, the Court adopted a flexible "doing business" standard to determine whether a party's contacts with a state satisfy due process requirements. 326 U.S. at 317, 66 S.Ct. at 158. Before *International Shoe,* the Supreme Court had indicated in *Cannon Mfg. v. Cudahy Packing Co.* that jurisdiction could not be exercised over a nonresident parent corporation with a forum state subsidiary when the parent and subsidiary had separate existences. 267 U.S. 333, 336–37, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925); *see also Garber v. BancAmerica–Blair Corp.,* 205 Minn. 275, 281, 285 N.W. 723, 727 (1939) (following *Cannon* and indicating that a subsidiary in the forum state does not subject the parent to jurisdiction when each have separate existences).

The *Cannon* rule had validity when the focus was on the presence of a business in a state. *See Pennoyer v. Neff,* 95 U.S. 714, 732–33, 24 L.Ed. 565 (1877) (discussing the need for a party to be within the territorial jurisdiction of the court for the proper exercise of personal jurisdiction). With the advent of *International Shoe* and a focus on minimum contacts, however, the justification for the *Cannon* rule lost support. Under *International Shoe,* it makes sense to go beyond corporate form to consider the nonresident parent corporation's contacts to determine whether due process requirements are satisfied.

Consistent with *International Shoe* and its progeny, several federal courts have refused to allow a parent-subsidiary relationship to bar automatically the exercise of jurisdiction over a nonresident parent corporation. These courts find a nonresident parent corporation's contacts with the forum state important in deciding whether jurisdiction exists. *See Warren v. Honda Motor Co.,* 669 F.Supp. 365, 369–70 (D.Utah 1987); *Brunswick Corp. v. Suzuki Motor Co.,* 575 F.Supp. 1412, 1419 (E.D.Wis.1983); *Hoffman v. United Telecommunications,* 575 F.Supp. 1463, 1470–71 (D.Kan.1983). *But see Lakota Girl Scout Council v. Havey Fund–Raising Management,* 519 F.2d 634, 637–38 (8th Cir.1975) (refusing to exercise jurisdiction over a nonresident parent corporation unless the corporate separateness of parent and subsidiary has been ignored to the point that corporate law would disregard the parent-subsidiary relationship); *Wehner v. Syntex Agribusiness,* 616 F.Supp. 27, 29 (E.D.Mo.1985) (same); *Hrtica v. Armstrong World Indus.,* 607 F.Supp. 16, 18–19 (S.D.Fla.1984) (same).

In *Busch v. Mann,* this court indicated that the separateness of parent and subsidiary should be respected for jurisdictional purposes. 397 N.W.2d 391 (Minn.App.1986). *Busch* is distinguishable, however, in that the record reveals no significant parent-corporation contacts with the subsidiary corporation, only that the parent was a holding company for the subsidiary. *Id.* at 395–96. Moreover, *Busch,* decided before *Valspar,* relies on the narrow jurisdictional requirement of Minn. Stat. § 543.19, subd. 3 (1992) that *Valspar* rejected. *Valspar,* 495 N.W.2d at 410.

◼ In this case there is evidence of contacts between Nitrochem and NEC. Nitrochem arranged for the shipment of ammonium nitrate to NEC. Nitrochem employees from Canada made frequent visits to the Biwabik plant, and, in January 1987, Nitrochem directed the Biwabik manufacturing operations to report to the Vice–President of Manufacturing at Nitrochem in Maitland, Ontario. Nitrochem also informed the Biwabik plant that an individual at the Maitland plant would be responsible for the daily operations of the Biwabik plant. Nitrochem received weekly reports on sales, production,

and expenses. In addition, NEC relied on Nitrochem for technical advice, including the formulas used for manufacturing MS–80. Because of these contacts, we think that ignoring the parent-subsidiary relationship would thwart an appropriate jurisdictional analysis in light of the direction afforded by *International Shoe.*

■ The district court's jurisdictional analysis evaluates the parent-subsidiary contacts only for the purpose of determining whether Nitrochem was a distributor in the stream of commerce. There are, however, no facts to support a claim that Nitrochem was a manufacturer or primary distributor generally marketing a product in Minnesota, and the stream-of-commerce analysis does not apply. *See World–Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567; *Rostad v. On–Deck, Inc.,* 372 N.W.2d 717, 720 (Minn. 1985), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). We therefore remand to the district court to allow proper consideration of jurisdictional contacts, including parent-subsidiary contacts, not limited to the stream-of-commerce context.

## II

■ A co-employee may be liable for the injury of another employee if the co-employee inflicts injury through gross negligence or intentional conduct. Minn.Stat. § 176.061, subd. 5(c) (1992). Liability attaches only if the co-employee breaches a personal duty owed to a fellow employee. *Dawley v. Thisius,* 304 Minn. 453, 456, 231 N.W.2d 555, 557 (1975); *see also Nelson v. Rodgers Hydraulic Inc.,* 351 N.W.2d 36, 38 (Minn.App.1984) (indicating that the requirements of both Minn.Stat. § 176.061, subd. 5(c) and *Dawley* must be met to impose liability on a co-employee). In *Dawley,* the Minnesota Supreme Court emphasized the constrictions of co-employee liability:

Personal liability * * * will not be imposed on a co-employee because of his general administrative responsibility for some function of his employment *without more.* He must have a personal duty towards the injured plaintiff, breach of which has caused plaintiff's damage.

304 Minn. at 456, 231 N.W.2d at 557–58 (emphasis added). The same requirements hold true whether or not the co-employee is acting in a supervisory capacity. *Id.* at 455, 231 N.W.2d at 557.

This issue is before the court on discretionary review following the district court's denial of Fields' summary judgment motion. Essentially, the district court determined that at this juncture, in light of the disputed facts, it cannot hold as a matter of law that Fields had no co-employee duty to Jarvi and Wicken. We agree.

■ Jarvi and Wicken produced evidence that Fields decided to burn the off-spec product and contacted the DNR for a burning permit. The DNR forester who signed the permit indicated that he specifically asked Fields if he planned to burn anything other than paper or wood, such as "rubber, plastics, etc." Fields said "no." The forester also indicated that he told Fields that if NEC wanted to burn materials other than paper and wood, the DNR would require Fields to produce an MPCA permit. The DNR permit that was issued on November 2, 1989 stated in part: "Description of what is to be burned: Paper wood (*no* plastics rubber etc.)." The permit also stated: "I agree to use all possible care in keeping this fire under control and to assume responsibility for all damages which may result from burning done under this permit * * * Signature of Permittee: [signed] Ronald Fields." The explosion that killed Wicken and Jarvi took place as Wicken and Jarvi were burning the off-spec material the day after the permit was obtained.

■ There is evidentiary support for Wicken and Jarvi's claim that Fields acted fraudulently in obtaining the burning permit. Fraud in obtaining the permit extends beyond administrative responsibility. A duty not to physically endanger fellow employees by fraudulent acts is independent of the employment relationship and comparable to duties held to be personal in other cases. *See Ackerman v. American Family Mut. Ins. Co.,* 435 N.W.2d 835, 836–38 (Minn.App. 1989) (duty to drive safely); *Johnson v. Ramsey County,* 424 N.W.2d 800, 805 (Minn. App.1988) (duty not to batter an employee), *pet. for rev. denied* (Minn. Aug. 24, 1988);

*Parker v. Tharp,* 409 N.W.2d 915, 916–17 (Minn.App.1987) (duty not to assault co-employee).

If Fields acted fraudulently in obtaining the permit, thereby breaching a personal duty, the facts could support a determination of co-employee liability. The evidence indicates that had the true components of the proposed burning been disclosed, an additional permit and substantially different procedures may have been required. Fields' acts in circumventing these procedures led to the burning of the MS–80, which in turn led to the deaths of Jarvi and Wicken.

■■■ The workers' compensation statute provides employees with protection beyond that typically afforded members of society by eliminating co-employees' liability for negligent acts; however, when their acts are grossly negligent or intentional, and breach a personal duty, the statutory protection is not provided. *See* Minn.Stat. § 176.061, subd. 5(c); *Dawley,* 304 Minn. at 456, 231 N.W.2d at 557. The workers' compensation statute does not bar Fields' liability to co-employees.

■■■ Fields nevertheless argues that he is immune from liability because the explosion stemmed from an unsafe work environment and that the duty to provide a safe work environment belongs exclusively to the employer. An employer shoulders the duty to provide employees with a safe work environment. *Dawley,* 304 Minn. at 456, 231 N.W.2d at 557. This duty is nondelegable and belongs "solely to the employer." *Weber v. Gerads Dev.,* 442 N.W.2d 807, 811 (Minn. App.), *pet. for rev. granted* (Minn. Sept. 15, 1989), *appeal dismissed* (Feb. 7, 1990).

We agree that the employer owes employees a nondelegable duty to provide a safe work environment. We do not agree, however, that Fields is immunized from liability on the basis of the employer's nondelegable duty. If Fields fraudulently obtained a permit, his misconduct actively created a dangerous situation extending beyond the scope of an employer's duty to provide a safe work environment.

## III

By separate motion Nitrochem asked this court to strike from Jarvi's and Wicken's brief and appendices material outside the record on appeal. Because the targeted material does not fall within an exception to the rule that materials not received into evidence may not be considered on appeal, the material is stricken. Minn.R.Civ.App.P. 110.01; *Plowman v. Copeland, Buhl & Co.,* 261 N.W.2d 581, 584 (1977). Supplemental information may be made part of the record only by an appropriate motion in the district court.

## IV

Contrary to Wicken's assertion, we do not believe that this appeal was taken solely for the purposes of delay. *See* Minn.R.Civ. App.P. 138 (an appellate court may award damages and costs when an appeal appears to have been taken merely for delay). Nitrochem's arguments raise legitimate issues and there is no merit to a request for an assessment of sanctions.

## DECISION

We remand the jurisdictional issue to allow the district court to properly analyze the jurisdictional contacts. We affirm the denial of Fields' summary judgment motion. The facts presented by Jarvi and Wicken, if proved, could support a finding that Fields breached a personal duty, outside the scope of his administrative responsibility, when he made fraudulent statements to obtain a burning permit.

**Affirmed in part and remanded.**