Kelci STRINGER, individually and as Personal Representative of the Estate of Korey Stringer, and as Trustee for the Heirs and Next of Kin of Korey Stringer, et al., Appellants,

v.

MINNESOTA VIKINGS FOOTBALL CLUB, LLC, et al., Respondents,

Dennis Green, et al., Defendants,

W. David Knowles, MD, et al., Defendants.

Nos. A03–1635, A04–205.

Court of Appeals of Minnesota.

Sept. 21, 2004.

Paul DeMarco (pro hac vice), Waite, Schneider, Bayless & Chesley Co., L.P.A., Cincinnati, OH; Eric J. Magnuson, Rider Bennett, L.L.P., Minneapolis, MN; Kenneth R. White, Law Office of Kenneth R. White, P.C., Mankato, MN; Richard G. Hunegs, Randal W. LeNeave, Hunegs, Stone, LeNeave, Kvas & Thornton, P.A., Minneapolis, MN; and Kevin O'C. Green, Law Offices of Kevin O'C. Green, P.A., Mankato, MN, for appellants.

James A. O'Neal, Bruce G. Jones, Amy R. Freestone, Faegre & Benson, L.L.P., Minneapolis, MN, for respondents.

Considered and decided by WRIGHT, Presiding Judge; RANDALL, Judge; and KALITOWSKI, Judge.

# O P I N I O N

WRIGHT, Judge.

Appellants brought a wrongful-death action against co-employees of the deceased. The district court granted summary judgment based on co-employee immunity under the workers' compensation act. Arguing that respondents (1) owed a personal duty to the deceased and (2) were grossly negligent in breach of that duty, appellants contend that summary judgment was erroneously granted because there are genuine issues of material fact as to whether an exemption to co-employee immunity applies. We affirm.

## FACTS

Korey Stringer, a professional football player with the Minnesota Vikings, died of complications from heat stroke on August 1, 2001. Appellant Kelci Stringer and other survivors brought this wrongful-death action in February 2002. The defendants included several employees of the Minnesota Vikings: head trainer Charles Barta, assistant trainer Paul Osterman, and coordinator of medical services Fred Zamberletti (collectively respondents).[1]

Stringer reported to training camp on July 29, 2001. On the first day of training camp, July 30, Stringer complained of bouts of stomachache. Late that afternoon, Stringer started vomiting during practice. A coach called Barta and asked him to assist Stringer. While on the field with Barta, Stringer vomited two more times. Barta then escorted Stringer to an air-conditioned first-aid trailer.

Inside the trailer, Osterman and Zamberletti were assisting other players. Barta told Zamberletti that Stringer was vomiting and needed to cool down. Barta then retrieved Dr. William Knowles, a training-camp physician. By the time Dr. Knowles arrived, Stringer had received water and was not exhibiting ill effects. According to Dr. Knowles's notes, Stringer suffered an "episode of heat exhaustion" but "recovered without incident following rest and hydration." That evening Barta supplied Stringer with two bottles of Gatorade to assist in rehydration.

Severe heat and humidity were predicted for morning practice on July 31. As part of the daily training-camp routine, all players were weighed before and after practice. Barta examined Stringer's weight chart, comparing Stringer's weight

1. Although Minnesota Vikings Football Club, LLC is also a defendant in this matter, its liability, if any, is not at issue in this appeal.

from the prior afternoon to his weight that morning. Barta did not note any extraordinary changes. As a result, Barta allowed Stringer to participate fully in morning practice.

At approximately 10:30 a.m., Stringer vomited again but continued to participate in practice. While working out on a large blocking dummy, Stringer dropped to one knee. Osterman checked on Stringer, who refused assistance. Shortly thereafter, Stringer lay down on the practice field. Osterman and another trainer were called to assist Stringer. Stringer got up and struck the blocking dummy once more; then Osterman escorted Stringer to the first-aid trailer.

Osterman and Stringer entered the trailer at approximately 11:20 a.m. Osterman gave Stringer water, and he took a few sips. Stringer lay down on the floor of the trailer at some point later. Approximately five to ten minutes after they had entered, Stringer asked Osterman to remove his shoes and ankle tape. As Osterman did so, he observed that Stringer was sweating and his skin was moist. Stringer thanked Osterman for his assistance. Osterman then gave Stringer iced towels to cool down. Stringer moved to an examination table for a few minutes, where he was observed humming and bobbing his head. Later he moved back to the floor. Osterman did not find this behavior unusual.

Another trainer arrived with a cart to transport Stringer back to the camp dormitory. But by that time, Stringer was unresponsive. Osterman instructed the other trainer to retrieve Zamberletti. While Osterman waited for Zamberletti to arrive, he took Stringer's pulse, which was "steady but weak."

When Zamberletti arrived, he saw Stringer breathing rapidly and concluded that Stringer was hyperventilating. To treat this condition, Zamberletti instructed another trainer to place a plastic bag around Stringer's mouth for 45 to 60 seconds. Zamberletti took Stringer's pulse and felt that Stringer's skin was cool and sweaty. Zamberletti then made emergency arrangements to transport Stringer to the hospital.

Stringer arrived at the hospital at approximately 12:25 p.m. His body temperature, measured for the first time that day, was 108.8 degrees. Stringer died early in the morning of August 1, 2001, from complications of heat stroke.

Appellants submitted seven expert affidavits on respondents' care and treatment of Stringer. Appellants' experts generally assert that, prior to Stringer's hospitalization, respondents failed to (1) properly investigate Stringer's condition; (2) prevent his participation in the July 31 practice; (3) observe changes in his behavior; (4) monitor his vital signs as his condition worsened; (5) diagnose and implement treatment for heat stroke; and (6) rapidly procure emergency treatment.

Appellants' experts raise more specific challenges to the actions of individual respondents. One alleges that, because players sometimes wore sweat-drenched uniforms when they were weighed, Barta lacked reliable data to calculate actual weight loss. Others allege that Zamberletti misdiagnosed Stringer for hyperventilation; they claim that, by placing a plastic bag around Stringer's mouth, Zamberletti exacerbated Stringer's heat stroke.

On these facts, respondents moved for summary judgment, contending that they had co-employee immunity under the workers' compensation act. The district court granted respondents' motion. This appeal followed.

## ISSUES

I. Are there genuine issues of material fact as to respondents' personal duty,

thereby precluding summary judgment based on co-employee immunity under the workers' compensation act?

II. Are there genuine issues of material fact as to respondents' gross negligence, thereby precluding summary judgment based on co-employee immunity under the workers' compensation act?

## ANALYSIS

Appellants contend that the district court erroneously granted respondents summary judgment based on co-employee immunity under the workers' compensation act. Whether summary judgment was properly granted is a question of law, which we review de novo. *Prior Lake Am. v. Mader,* 642 N.W.2d 729, 735 (Minn. 2002). In doing so, we consider whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). A genuine issue of material fact does not exist when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH; Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "[T]he party resisting summary judgment must do more than rest on mere averments." *Id.* at 71. A genuine issue for trial must be established by substantial evidence. *Id.* at 69–70. We view the evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). Summary judgment is appropriate when a party fails to establish the existence of an element essential to the party's case. *Bersch v. Rgnonti & Assocs., Inc.,* 584 N.W.2d 783, 786 (Minn.App.1998), *review denied* (Minn. Dec. 15, 1998).

Here, the district court granted summary judgment on two separate bases. First, it held that respondents had no personal duty to Stringer. In the alternative, the district court held that respondents' actions were not grossly negligent. Because the existence of a duty is a prerequisite to negligence, we address this issue first.

## I.

The workers' compensation act is based on a "mutual renunciation of common law rights and defenses by employers and employees alike." Minn.Stat. § 176.001 (2002). Employers assume strict liability for workplace injuries, assuring that employees receive due compensation, while also avoiding the expense of complex common-law litigation. *Foley v. Honeywell, Inc.,* 488 N.W.2d 268, 271 (Minn.1992). Underlying strict liability is the premise that employers have an exclusive and nondelegable duty to provide a safe workplace. *Wicken v. Morris,* 527 N.W.2d 95, 99 (Minn.1995). Because co-employees execute this duty, they ordinarily are conferred immunity. *Id.* But co-employee immunity does not exist when "the injury resulted from the gross negligence of the co-employee or was intentionally inflicted by the co-employee." Minn. Stat. § 176.061, subd. 5(c) (2002).

Prior to the codification of co-employee immunity at section 176.061, the Minnesota Supreme Court considered the scope of this immunity in *Dawley v. Thisius,* 304 Minn. 453, 455, 231 N.W.2d 555, 557 (1975), holding:

> The acts of negligence for which a co-employee may be held liable must be acts constituting direct negligence toward the plaintiff, tortious acts in which he participated, or which he specifically directed others to do. A co-employee may be held liable when, through per-

sonal fault as opposed to vicarious fault, he breaches a duty owed to plaintiff.... He must have a personal duty towards the injured plaintiff, breach of which has caused plaintiff's damage.

*Id.* (citations omitted). The *Dawley* court concluded that there was no personal duty based on a manager's "general administrative responsibility" to maintain a safe workplace. *Id.*

Following the enactment of section 176.061, the Minnesota Supreme Court revisited the concept of personal duty in *Wicken,* 527 N.W.2d at 98. Adopting and expanding the analysis in *Dawley,* the *Wicken* court emphasized that personal duty does not attach when an employee executes the employer's nondelegable duty to provide a safe workplace. *Id.* at 99. It reaffirmed the principle of *Dawley,* again holding that personal duty does not include a manager's "administrative activity" to keep a safe workplace. *See id.* The *Wicken* court described personal duty as "no different than the duty any individual owes another arising from normal daily social contact—the duty to refrain from conduct that might reasonably be foreseen to cause injury to another." *Id.* at 98.

In other cases involving managers and officers with administrative responsibility for workplace hazards, *Dawley* and *Wicken* have been consistently interpreted to provide immunity from negligence actions. In these cases, because the employees' actions were pursuant to the employer's nondelegable duty to provide a safe workplace, no personal duty attached. *See, e.g., Buck v. Freeman,* 619 N.W.2d 793, 795–96 (Minn.App.2000), *review denied* (Minn.

Feb. 21, 2001); *Wood v. Korn,* 503 N.W.2d 523, 525 (Minn.App.1993), *review denied* (Minn. Aug. 24, 1993).

■■ Based on the foregoing authorities, a personal duty arises when a co-employee undertakes direct acts toward another employee, *Dawley,* 304 Minn. at 455, 231 N.W.2d at 557, that are not pursuant to the employer's nondelegable duty to provide a safe workplace, *Wicken,* 527 N.W.2d at 99. The scope of this duty is similar to that owed in the course of mutual association during any ordinary social contact. *Id.* at 98.

Appellants not only contend that Stringer's injuries arose out of an unsafe workplace, but also that respondents failed to identify Stringer's injuries and ensure proper treatment. We observe that, because appellants' claim is not strictly based upon alleged workplace hazards, the analysis here is unique.[2]

■ When the facts are taken in the light most favorable to appellants, respondents Osterman and Zamberletti both observed Stringer's heat exhaustion on July 30, but they did not take further action. When Stringer exhibited symptoms of heat stroke on July 31, neither recognized these symptoms or took action to treat them properly.

Osterman and Zamberletti both were directly engaged in the care and treatment of Stringer. Because their actions did not involve general workplace safety or the removal of workplace hazards, their actions were not pursuant to their employer's nondelegable duty to provide a safe

**2.** Only two other states, Florida and Iowa, currently extend immunity to co-employees but provide an exemption for some form of negligence. *See* 6 Arthur Larson & Lex K. Larson, *Workers' Compensation Law* § 111.03 (2002); *see also* Fla. Stat. ch. 440.11(1)(b) (2003); Iowa Code § 85.20 (2001). Neither

of these jurisdictions has considered a factual situation comparable to the one presented here. *See generally* Marjorie A. Shields, Annotation, *Award of Workers' Compensation Benefits to Professional Athletes,* 112 A.L.R.5th 365 (2003).

workplace. We, therefore, hold that Osterman and Zamberletti had a personal duty to Stringer.

■ This personal duty is equivalent to that of any ordinary person in the course of ordinary social contact. *Wicken,* 527 N.W.2d at 98. When an ordinary person knows of another's distress and takes charge of or controls the circumstances, that person has an affirmative duty to provide due care. *See, e.g., Regan v. Stromberg,* 285 N.W.2d 97, 99–100 (Minn. 1979) (finding genuine issue of material fact as to whether husband was in charge of intoxicated wife and thereby owed duty of due care to her when he abandoned her on a highway at night); *Tiedeman ex rel. Tiedeman v. Morgan,* 435 N.W.2d 86, 88 (Minn.App.1989) (finding that host aware of guest's heart condition owed duty of due care to guest upon learning that guest was suffering an "episode of illness"), *review denied* (Minn. Mar. 29, 1989). That duty exists here, regardless of the co-employee relationship among Stringer, Osterman, and Zamberletti. *See Dawley,* 304 Minn. at 455, 231 N.W.2d at 557.

■ Again, viewing the evidence in the light most favorable to appellants, Barta knew of Stringer's heat exhaustion on July 30. Barta was responsible for accurately weighing the players, but he did not ensure that these measurements were correct. Barta also did not take Stringer out of practice on July 31.

Arguably, when Barta evaluated Stringer's weight, Barta was undertaking a direct act toward Stringer. But there is no question that Barta did so to determine whether it was safe for individual players to practice. Because Barta's actions arose out of his employer's nondelegable duty to ensure safe work conditions, we hold that Barta had no personal duty to Stringer. In the absence of a personal duty, Barta enjoys the protection of co-employee im-

munity under Minn.Stat. § 176.061, subd. 5(c).

Relying on the district court's analysis, respondents argue that any action by a co-employee within the scope of employment is necessarily excluded from personal duty. This proposition is not directly stated in any workers' compensation immunity cases. Citing several unpublished opinions, respondents derive this rule from the fact that, in these cases, actions within the scope of employment caused the injury. *See, e.g., Wicklander v. Rarick,* No. C5–02–1217, 2003 WL 282384, at *3 (Minn. App. Feb. 11, 2003) (finding no personal duty where prison workshop supervisors failed to protect foreperson from violent offender); *Graves v. McConnell,* No. C1–99–1929, 2000 WL 719753, at *5 (Minn. App. June 6, 2000) (finding no personal duty where plant operator, due to breakdown in workplace procedures, miscommunicated that plaintiff had already left steam tunnel).

This argument is unavailing. As the foregoing analysis indicates, under some circumstances, personal duty may be coextensive with employment duties. But not *every* action taken by an employee is in furtherance of the employer's nondelegable duty to provide a safe workplace. *Cf. Stelling v. Hanson Silo Co.,* 563 N.W.2d 286, 290 (Minn.App.1997). Because Osterman and Zamberletti undertook direct acts toward Stringer that were not in furtherance of their employer's duty to provide a safe workplace, a personal duty arose.

## II.

■ Once the personal duty is established, liability is incurred only if the actions of the co-employees are grossly negligent. Minn.Stat. § 176.061, subd. 5(c). The Minnesota Supreme Court first provided a detailed definition for gross negli-

gence in *State v. Bolsinger*, 221 Minn. 154, 159, 21 N.W.2d 480, 485 (1946). It said:

> Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty, and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others.

*Id.* (quoting *Altman v. Aronson*, 231 Mass. 588, 121 N.E. 505, 506 (1919)). This definition has subsequently been applied to determine whether co-employee liability exists in workers' compensation cases. *See Ackerman v. Am. Family Mut. Ins. Co.*, 435 N.W.2d 835, 840 (Minn.App.1989).

More recently, in *State v. Chambers*, again in the context of criminal vehicular homicide, the Minnesota Supreme Court revisited the gross negligence standard. 589 N.W.2d 466, 478–79 (Minn.1999). Based on a narrow indirect quotation from *Bolsinger*, the *Chambers* court defined gross negligence as action "without even scant care but not with such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong." *Id.* This definition was later adopted by the Minnesota District Court Judges Association in the guideline jury instruction for gross negligence. *See* 4 *Minnesota Practice*, CIVJIG 25.35 (1999) ("Gross negligence occurs when a person does not pay the slightest attention to the consequences, or uses no care at all.").

Few cases have considered whether a co-employee's actions reach the threshold of gross negligence. All of these have concluded that gross negligence did not occur. Thus, it was not gross negligence when a supervisor assembled a nonstandard scaffolding system for silo construction. *Terveer v. Norling Bros. Silo Co.*, 365 N.W.2d 279, 280 (Minn.App.1985), *review denied* (Minn. May 31, 1985); *cf. Ackerman*, 435 N.W.2d at 840 (finding no gross negligence when evidence showed defendant had safely operated truck, but could not stop in time to prevent collision).

On the evening of July 30, after Stringer's bout with heat exhaustion, Barta sent Gatorade to Stringer's dormitory to assist in rehydration. After morning practice on July 31, Osterman walked with Stringer to the first-aid trailer. Osterman observed Stringer's condition, gave him water, removed his shoes, and applied iced towels. When Zamberletti arrived, he attempted to treat Stringer for hyperventilation and then arranged emergency transportation to the hospital.

Even when viewed in the light most favorable to appellants, the uncontroverted record establishes that respondents were cognizant of potential adverse consequences arising from Stringer's condition and took some actions to care for him. Respondents' actions may reflect poor judgment or lack of reasonable care, but there is no basis to conclude that respondents disregarded the risk to Stringer altogether in a manner "equivalent to a willful and intentional wrong." *Chambers*, 589 N.W.2d at 478. Because the evidence, viewed most favorably to appellants, cannot support a conclusion of gross negligence as a matter of law, the district court properly granted summary judgment. *Cf. Terveer*, 365 N.W.2d at 281.

In challenging the district court's conclusion that the record does not support a determination of gross negligence,

appellants rely on their experts' affidavits, which uniformly conclude that respondents failed to provide even scant care for Stringer. Conclusory statements in an expert affidavit do not necessarily preclude. summary judgment, *Potter v. Pohlad,* 560 N.W.2d 389, 395 (Minn.App.1997), *review denied* (Minn. June 11, 1997), and will not remedy a legally deficient claim, *In re Trusts A & B of Divine,* 672 N.W.2d 912, 918 (Minn.App.2004). Even if appellants' experts correctly determined that respondents' actions led to Stringer's death, a contrary outcome is not compelled under the applicable standard for gross negligence.

### III.

 Appellants also challenge the district court's award of $34,981 to respondents for expert fees. Prior to assessing costs and disbursements, the district court must hold an oral hearing "so a full record is available for review." *Stinson v. Clark Equip. Co.,* 473 N.W.2d 333, 338 (Minn. App.1991), *review denied* (Minn. Sept. 13, 1991). Here, the district court conducted a hearing on costs and disbursements, but appellants failed to provide a transcript of that hearing on appeal. Without a record, we must assume that the findings of the district court would be supported by what occurred at the hearing, and we decline to consider appellants' challenge to this award. *See Noltimier v. Noltimier,* 280 Minn. 28, 29, 157 N.W.2d 530, 531 (1968) (allowing dismissal of appeal based upon incomplete record).

### DECISION

Respondents Osterman and Zamberletti undertook direct acts toward Stringer that were not pursuant to their employer's nondelegable duty to provide a safe workplace; conversely, respondent Barta's actions were pursuant to this duty. Accordingly, Osterman and Zamberletti had a personal duty to Stringer, but Barta did not. All respondents nevertheless exercised more than a scant level of care that did not entirely disregard the particularly adverse consequences arising from the symptoms of injury Stringer exhibited. Because the facts viewed in the light most favorable to appellants do not establish a genuine issue of material fact as to whether respondents were grossly negligent, the district court did not err by entering summary judgment in favor of respondents.

**Affirmed.**