IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
July 18, 2025 03:38 PM
ST-2022-CV-00240
**TAMARA CHARLES
CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**
\*\*\*\*

JUSTIN NIGG and LORRAINE NIGG, )
)
Plaintiffs, )
)
vs. )  CASE NO. ST-2022-CV-00240
)
MARRIOTT HOTEL MANAGEMENT )
COMPANY (VIRGIN ISLANDS), INC., )  **Cite as 2025 V.I. Super 24**
CREF3 USVI HOTEL OWNER, INC., )
MANITOU NORTH AMERICA, LLC., )
BLUEWATER CONSTRUCTION INC., )
JEREMY HENKEL, and PROJECT )
DEVELOPMENT SERVICES, INC. )
)
Defendants. )
)

## MEMORANDUM OPINION AND ORDER

¶ 1    **THIS MATTER** is before the Court on Defendants, Bluewater Construction Inc.'s ("Bluewater") and Jeremy Henkel's ("Henkel"), Renewed Motion for Judgment as a Matter of Law and Motion for New Trial. After a five-day trial, the jury returned a verdict in favor of Plaintiffs and against Defendants. For the following reasons, the Court shall deny the Motion for New Trial but grant, in part, and deny, in part, the Motion for Judgment as a Matter of Law, dismissing Defendant Henkel as a party to this action.

### I.    PROCEDURAL AND FACTUAL HISTORY

¶ 2    On July 17, 2021, John Nigg ("Decedent"), an employee of Bluewater, was operating a Model 642 Extended-Reach Tele-Handler forklift (the "forklift") at a hotel construction site in St. Thomas, U.S. Virgin Islands.[1] Decedent lost control of the Forklift, such that the machine toppled

---

[1] The hotel at the time was known as the "Frenchman's Reef & Morning Star Marriott Beach Resort."

over on its side, falling on and crushing Decedent to death. Subsequently, on July 18, 2022, Plaintiffs Justin Nigg ("Justin"), son of Decedent, and Lorraine Nigg ("Lorraine"), mother of Decedent, filed a complaint, asserting several counts against multiple Defendants, including claims against the employer, Bluewater, and the president of Bluewater, Henkel.[2] Specifically, Plaintiffs claimed that Bluewater acted negligently by failing "to provide a reasonably safe work environment"[3] and that Henkel, as managing agent, participated in Bluewater's negligence. Plaintiffs claimed Henkel was liable under the so-called "participating agent liability" theory.

¶ 3　　From February 10 to 14, 2025, this Court held a jury trial. During the trial, the Court heard eyewitness and expert witness testimony concerning Decedent's fatal accident. Significantly, fellow worker Reuben Lopez ("Lopez") testified that he witnessed Decedent under the forklift, moving his hand up toward him, to which Lopez told Decedent that everything was going to be okay. The Court also heard from Plaintiffs Justin and Lorraine about their emotional damages. Justin described how losing his father affected him, and Lorraine emphasized the pain of losing a son. Additionally, Plaintiffs presented an expert economic witness, Dr. Volkov, who explained how he calculated the amount of Decedent's economic damages, i.e., lost earnings. Defendants did not object to the expert witness. The Court also heard evidence regarding whether Bluewater retained its "covered employer" status under the Virgin Islands Workers' Compensation Act ("VIWCA"), which would shield Bluewater from suit under the statute's exclusive remedy provision. Lastly, during closing arguments, Plaintiffs' counsel asked the jury to award Decedent

---

[2] *See* Plfs.' Compl. at 3-8.
[3] *Id.* at 5.

and Plaintiffs specific, non-economic damage amounts. Plaintiffs' counsel also articulated to the jury how it calculated the suggested figure for Decedent's pain and suffering prior to death.

¶ 4    After hearing the evidence, the Court instructed the jury on the law, specifically explaining the legal effect of the jury's comparative fault allocation determination. The Court explained that the law prevents Plaintiffs' recovery of damages "only if he is found to be more at fault than the defendants."[4] The Court also informed the jury of Plaintiffs' claims. In particular, the Court instructed the jury on the claim of participating agent liability, stating in relevant part:

> If you find [Bluewater] negligent, you must determine whether [Henkel] as its managing agent, directly participated in or encouraged that negligence. If you find that Henkel failed to act as a reasonable managing agent would under similar circumstances by participating in or encouraging the negligence of [Bluewater], you may find that Henkel breached his duty.[5]

Defendants did not object to the Court's instruction before or during the trial. The Court also outlined Bluewater's affirmative defense under the VIWCA:

> To succeed on its defense, [Bluewater] has to prove that it was a covered employer, and a covered employer is a person who has complied with the statutory requirements . . . .. In evaluating whether Bluewater was a covered employer, you should consider whether Bluewater substantially increased its payroll between the time it filed its estimated 2021 payroll and [Decedent's] death, such that Bluewater became obligated to file a supplementary payroll report and paid the supplemental premium to the Virgin Islands Department of Finance.[6]

¶ 5    Finally, after engaging in due deliberations, the jury returned a verdict in favor of Plaintiffs on February 14, 2025. The jury allocated 25% fault to Defendant Project Development Services, Inc., 45% to Bluewater, 20% to Henkel, and 10% to Decedent. The jury awarded $657,414.00 for Decedent's pain and suffering. The jury further awarded the following non-economic damages:

---

[4] *Id.* at 179:8-9.
[5] Trial Tr. Vol V. at 169:16-24.
[6] *Id.* at 163:3-22.

$1,000,000.00 for Decedent, $4,000,000.00 for Justin, and $2,000,000.00 for Lorraine. On February 21, 2025, the Court entered judgment in accordance with the verdict. The Court amended the Judgment on March 17, 2025. On March 21, 2025, Defendants Bluewater and Henkel filed a Renewed Motion for Judgment as a Matter of Law and New Trial pursuant to Rules 50 and 59 of the Virgin Islands Rules of Civil Procedure. The Court will analyze each of Defendants' arguments below.

## II. LEGAL STANDARD

¶ 6     Defendants' Renewed Motion for Judgment as a Matter of Law is governed by Rule 50(b) of the Virgin Islands Rules of Civil Procedure:

> No later than 28 days after the entry of judgment... the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law.

### A. Motion for Judgment as a Matter of Law

¶ 7     The original motion for judgment as a matter of law "must specify the judgment sought and the law and facts that entitle the movant to the judgment." V.I. R. Civ. P. 50(a)(2). The Court may grant the motion for judgment as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on" a particular issue addressed at trial. V.I. R. Civ. P. 50(a)(1). Specifically, the Court may only grant the motion when "viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could have drawn its findings." *Lembach v. Antilles Sch., Inc.*, 2015 WL 2120508, *2 (V.I. Super. Ct. 2015) (quoting *Chestnut v. Goodman*, 59 V.I. 467, 475 (V.I. 2013)). The Court "should review the record as a whole and must refrain from weighing the evidence, determining the credibility of the witnesses,

or substituting its own version of the facts for that of the jury." *Id.* (citations and internal quotation marks omitted)

¶ 8    "The Court does not sit as a trier of fact when making its determination on a motion for judgment as a matter of law." *Cherubin v. LIAT (1974), Ltd.*, 70 V.I. 558, 564 (V.I. Super. Ct. 2019) (citation omitted). "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper." *Id.* (quoting *Hunter on Behalf of Hunter v. Knoll Rig & Equip. Mfg. Co., Ltd.*, 70 F.3d 803, 808 (5th Cir. 1995)). However, "if there is substantial evidence ... of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied." *Id.* Therefore, a jury verdict will not be disturbed if "the record contains even the minimum quantum of evidence from which a jury might reasonably afford relief." *Id.* (quoting *Ross v. Hodge*, 58 V.I. 292, 301 (V.I. 2012)). Accordingly, "[t]he Court's only concern is the sufficiency of the evidence." *Cherubin*, 70 V.I. at 564 (quoting *Payne v. Charles*, 2018 WL 637423, *1 (V.I. Super. Ct. 2018)).

## B. Motion for New Trial

¶ 9    Under Rule 59(a)(1) of the Virgin Islands Rules of Civil Procedure, after a jury trial and upon motion, the Court may order "a new trial on all or some of the issues" for "any party" based on any of the following:

> (i) newly discovered evidence that is material to a party's claim or defense and that could not have been discovered before trial despite the exercise of due diligence; (ii) misconduct of a juror or jury tampering; (iii) accident or surprise that ordinary prudence could not have guarded against; (iv) excessive or inadequate damages; (v) an intervening change in controlling law; or (vi) attorney or party misconduct that undermined the trial.

Regarding excessive damages awards, the Virgin Islands Supreme Court has found that:

> [R]emittitur is wholly inconsistent with this Court's long-standing jurisprudence that questions of fact should be resolved by a jury, that a jury's factual determinations should be respected so long as there is a sufficient evidentiary basis, and that it is not the role of a judge to weigh the evidence when it has been submitted to a jury for a determination.

*Antilles Sch., Inc. v. Lembach*, 64 V.I. 400, 433 (V.I. 2016). However, the Court may grant a new trial based on excessive damages where: (1) "the evidence before the trial court is insufficient to support the jury's damages award," or (2) "the damages awarded by the jury are so excessive as to violate the Due Process Clause of the Fifth or Fourteenth Amendments to the United States Constitution." *R.J. Reynolds Tobacco Co. v. Gerald*, 76 V.I. 656, 694 (V.I. 2022) (quoting *Antilles*, 64 V.I. at 438).

### III.   DISCUSSION

#### A.  Workers' Compensation

##### (i)      The Jury Instruction Was Proper.

¶ 10    Defendants claim that the Court committed clear error when it instructed the jury on the law regarding "covered employer" status under the VIWCA. The Court disagrees. Generally, "a party who fails to object to errors at trial waives the right to complain about them following trial." *Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir. 1998). *See also Christine v. Davis*, 600 F. App'x 47, 50 (3d Cir. 2015) ("[A]s Christine did not make a contemporaneous objection to the introduction of [an exhibit], that issue is waived [in a motion for a new trial]."). However, in a post-trial motion, the Court may review a waived objection for plain error. *See United States v. Tiller*, 302 F.3d 98 (3d Cir. 2002) ("Failure to object at trial, absent plain error, constitutes a waiver of the issue for post-trial purposes."); *Mosler v. Gerace*, 78 V.I. 649, 681 (V.I. 2024) (finding that plain error review is applicable absent a "contemporaneous objection"). Under the plain error

standard, the Court may only correct an error that is "plain," which "affect[s] substantial rights," and "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Marsh-Monsanto v. Clarenbach*, 66 V.I. 366, 381 (V.I. 2017) (quoting *Rawlins v. People*, 58 V.I. 261, 268 (V.I. 2013)). The Court "may consider a plain error in the [jury] instructions that has not been preserved [by an objection] . . . if the error affects substantial rights." V.I. R. Civ. P. 51(d)(2). Because Defendants failed to raise a contemporaneous objection, the Court shall review the jury instruction for plain error.

¶ 11     Defendants contend that the Court erred by instructing the jury that it could find Defendants exempted from covered employer status if the evidence showed that Defendants failed to comply with Section 274(b) of the VIWCA. Unless an employer loses its covered or insured status under the VIWCA, the employer is immune from suit because an injured employee is statutorily restricted to recover from workers' compensation alone. *See* 24 V.I.C. § 284(a). Section 274(b) of the VIWCA provides that "[s]hould any employer substantially increase his payroll during the term of insurance, he shall file a supplementary statement and pay the additional premiums based thereupon within 30 days after such increase." 24 V.I.C. § 274(b). In *Island Tile*, the Supreme Court addressed "whether an employer must comply with all of the statutory provisions of the Workers Compensation Act in order to be considered an insured employer." *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 624 (V.I. 2012). The Supreme Court "answer[ed] the question in the affirmative." *Id.*

¶ 12     However, Defendants assert that *Island Tile* is irrelevant because the Supreme Court's holding is narrow and only related to Section 272(c) of the VIWCA.[7] The Supreme Court has

---

[7] The Court notes that 24 V.I.C. § 272(c) was repealed by the legislature in 2024 by Act 8859, § 1 (q).

"supreme judicial power of the Territory," and the Superior Court must, accordingly, adhere to the Court's binding precedent. *Balboni v. Ranger Am. of the V.I., Inc.*, 70 V.I. 1048, 1070 (V.I. 2019) (quoting 4 V.I.C. § 21). "[T]he [United States] Supreme Court has 'consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'" *United States v. Kennedy*, 682 F.3d 244 (3d Cir. 2012) (quoting *Briggs v. Pa. R. Co.*, 334 U.S. 304, 306 (1948)). However, "[a] trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id.* (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir.1985); *see also Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) (holding that United States Supreme Court "opinions are to be read in the light of the facts of the case under discussion").

¶ 13     In *Island Tile*, the Supreme Court interpreted the question of whether an employer must comply with all the VIWCA's statutory provisions to prevent loss of insured status only within the context of Section 272(c), not Section 274(b). The Court held "that the VIWCA simply means what it says: '[e]very employer who has not filed the required reports and paid the premium due to which this section refers within the term herein fixed shall be considered an uninsured employer.'" *Id.* (citing 24 V.I.C. § 272(c)). Defendants argue that the Supreme Court "merely stated a tautology respecting a single subsection of the V.I. Code" and that the "Court specifically declined to construe the meaning of 'required reports,' or 'premiums due' or the 'proper interpretation' of 24 V.I.C. § 261(b)(1)."[8] In addition, unlike Section 272(c), neither Section 274(b) nor other sections of the VIWCA explicitly state that failure to adhere to the subsection's

---

[8] Mot. for JMOL and New Trial at 4.

requirements results in loss of insured status. Thus, the Court is reluctant to strictly apply *Island Tile*'s holding to this case.

¶ 14    However, regardless of whether *Island Tile* applies, the Court finds that, under ordinary rules of statutory interpretation, an employer who fails to comply with Section 274(b) loses covered employer status. "The first step when interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning." *Richards v. Pub. Emps. Rels. Bd.*, 2024 WL 5245002, *5 (V.I. 2024) (citation omitted). If "the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed." *Id.* (citation omitted). "Statutory language is ambiguous when it is susceptible to more than one interpretation." *Id.* (citation omitted). Where there is interpretative ambiguity, the Court may "examine the legislative history of the statute and its purpose to ascertain if a proposed interpretation was within the legislature's intent." *Id.* (citation omitted). However, the Court also must "remain mindful that a statute should not be construed and applied in such a way that would result in injustice or absurd consequences." *Id.* (citation and internal quotation marks omitted). Lastly, the Court shall "give effect to every [statutory] provision, making sure to avoid interpreting any provision in a manner that would render it - or another provision — wholly superfluous and without an independent meaning or function of its own." *Id.* at *6 (citations and internal quotation marks omitted).

¶ 15    On its face, the statutory language of Section 274(b) of the VIWCA is unambiguous. The statute states that "[s]hould any employer substantially increase his payroll during the term of insurance, he *shall* file a supplementary statement and pay the additional premiums based thereupon within 30 days after such increase." 24 V.I.C. § 274(b) (emphasis added). The

subsection, therefore, makes clear that a substantial increase in payroll requires an employer to file a supplementary statement and to pay additional premiums in a timely manner. Although the subsection does not explicitly state a consequence for failure to adhere, the most coherent and sensible result is loss of the employer's insured status. Any ambiguity is resolved by the fact that a different interpretation would render an unjust and absurd result, inconsistent with the letter and spirit of the VIWCA.

¶ 16    The Legislature could not have intended that a violator of an express prerequisite of the VIWCA may nonetheless continue to be a covered employer, leaving employees without a legal remedy. The Court must avoid an interpretation that would cause Section 274(b) to be "wholly superfluous and without an independent meaning or function of its own." *Richards*, 2024 WL 5245002 at *6. Furthermore, the legislative purpose of the VIWCA demands that employees receive "expeditious compensation." 24 V.I.C. § 250.  That purpose would be diminished were employers permitted to remain insured despite violating Section 274(b). Timely payment of workers' compensation premiums prevents delays in benefits to affected employees who are injured or become ill on the job. When employers pay their premiums accurately and in a timely manner, it ensures that funds are available to pay healthcare providers promptly.  This is vital for the stability and solvency of the entire fund. It would undermine the integrity of the scheme and would be fundamentally unfair for a delinquent employer to receive the same protection as a fully compliant employer. Employers cannot expect protection from being sued directly if they fail to fund the system as mandated by the statute. Therefore, the Court finds that an employer's failure to comply with Section 274(b) results in the cessation of covered employer status, permitting an injured employee or their representative to sue the employer. Accordingly, the Court did not

commit plain error when it instructed the jury regarding the law on insured employer status under the VIWCA.

**(ii)     Plaintiffs Produced Sufficient Evidence of Bluewater's Loss of Covered Employer Status Under the VIWCA.**

¶ 17     In the alternative, Bluewater asserts that the jury could not have found that Bluewater lost insured status, because there was insufficient evidence of a substantial increase in payroll during the term of insurance. The Court disagrees. As Bluewater raised this argument in its initial motion for judgment as a matter of law, the Court shall review the record under the sufficiency of the evidence standard. *See* V.I. R. Civ. P. 50(a)(1). Accordingly, the Court shall not weigh the evidence, *Lembach*, 2015 WL 2120508 at \*2 (citation omitted), but rather the Court need only determine whether there is a "minimum quantum of evidence from which a jury might reasonably afford relief." *Cherubin*, 70 V.I. at 564 (citation omitted). Lastly, the Court must "view [] the evidence in the light most favorable to" Plaintiffs. *Lembach*, 2015 WL 2120508 at \*2 (citation omitted).

¶ 18     Specifically, Bluewater contends that there was insufficient evidence for the jury to find that Bluewater failed to file a supplementary report and pay the additional premium between February 12, 2021, the date Bluewater filed its initial estimated payroll report, and July 17, 2021, the date Decedent died. However, Plaintiffs produced evidence that Bluewater hired Decedent on May 21, 2021, and, thus, the initial payroll report did not include Decedent's wages, as he was hired after the report was filed. Bluewater did not report Decedent's effect on the payroll estimate until filing a new report for the following year's insurance period on February 18, 2022. The record is devoid of any evidence that Bluewater filed a supplementary report or paid an additional premium for the payroll increase within thirty (30) days of Decedent's hiring. A reasonable jury

could conclude that Bluewater experienced a substantial increase in payroll within the insurance term of 2021 and that, subsequently, Bluewater failed to timely report and make payment for such increase.

¶ 19    Therefore, the only issue remaining is whether Bluewater's payroll "substantially increase[d]" within the meaning of Section 274(b). Generally, "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language." 1 V.I.C. § 42. As the VIWCA does not define what the term "substantial" means, the jury was free to decide, within reason, what amounts to a substantial increase in payroll. Decedent earned approximately $104,000 per year or $2,000 per biweekly pay period. This increase was not reflected in Bluewater's payroll until the following year. Therefore, "there is substantial evidence … of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions" on whether such an increase was substantial. *Cherubin*, 70 V.I. at 564 (citation omitted). Accordingly, the Court shall not disturb the trier of fact's verdict, upholding the jury's decision to remove Bluewater's insured status shield under the VIWCA.

**B. Participating Agent Liability Theory**

¶ 20    Defendants assert that the Court erred in submitting to the jury the Plaintiffs' claim of "participating agent liability" against Henkel. The Court agrees, finding that the law of the Virgin Islands does not support holding Henkel personally liable for participating in Bluewater's negligent breach of the duty to provide safe work conditions. As Plaintiffs' claim of participating agent liability is based on negligence, Plaintiffs needed to prove that Henkel breached a duty of care to Decedent independent from the duty owed to his employer, Bluewater. Upon *Banks*

analysis, the Court finds that the employer's duty to provide a safe workplace is non-delegable; thus, generally, an employer's agent cannot be held liable for failure to carry out that duty. An exception applies, however, where an agent goes beyond the duty by committing affirmative wrongful or negligent acts. Ultimately, Plaintiffs failed to distinguish Bluewater's and Henkel's duties and failed to show that Henkel engaged in affirmative intentional acts, removing the non-delegation rule's cloak of immunity. The Court's detailed analysis shall follow below.

### (i) Participating Agent Liability Theory and Agents' Duty of Care.

¶ 21    The Plaintiffs' cause of action for "participating agent liability" is based on the tort of negligence. At trial, the Court instructed the jury that it could find Henkel personally liable as a so-called "participating agent" in Bluewater's wrongful acts or omissions. Specifically, Plaintiffs claimed that "Henkel, in his capacity as managing agent of Bluewater, breached a duty of care by participating in or encouraging unsafe conditions that proximately caused [Decedent's] death."[9] As the "participating agent liability" theory is one of first impression, the Court looked to other jurisdictions for guidance.

¶ 22    The Court found that a vast majority of jurisdictions apply the general rule that corporate officers or agents may be held personally liable for torts they committed, directed, authorized, inspired, or otherwise participated in, regardless of whether the acts or omissions occurred within the scope of employment. *See e.g. Vuitch v. Furr*, 482 A.2d 811, 821 (D.C. 1984) ("The general rule is that corporate officers are personally liable for torts which they commit, participate in, or inspire, even though the acts are performed in the name of the corporation.") (citation omitted); *White v. Wal-Mart Stores, Inc.*, 918 So. 2d 357, 358 (Fla. Dist. Ct. App. 2005) ("[O]fficers or

---

[9] Plfs.' Resp. to Defs.' Rule 50/59 Mot.

agents of corporations may be individually liable in tort if they commit or participate in a tort, even if their acts are within the course and scope of their employment.") (citation omitted).

¶ 23    However, as the "participating agent" theory is based in agency law, courts have found that the injured third party must prove that the agent or officer personally breached a duty of care owed to the third party, separate from the agent's duty owed to the principal or employer. *See White*, 918 So. 2d at 358 ("[T]he complaining party must allege and prove that the officer or agent owed a duty to the complaining party, and that the duty was breached through personal (as opposed to technical or vicarious) fault.") (citation omitted); *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996) ("A corporate officer or agent can be liable to others, including other company employees, for his or her own negligence. However, individual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty.") (citations omitted); *see also Crigler v. Salac*, 438 1375, 1380 (Ala. 1983) ("In order to hold an officer of a corporation liable for the negligent or wrongful acts of the corporation, there must have been upon his part such a breach of duty as contributed to, or helped bring about, the injury; that is to say, he must be a participant in the wrongful act.") (citation and internal quotation marks omitted). This principle is supported by the Restatement (Third) of Agency, which provides that "[a]n agent is subject to liability to a third party harmed by the agent's tortious conduct only when the conduct breaches a duty that the agent owes to the third party." Restatement (Third) Of Agency § 7.02 (2006). The Restatement elaborates that the agent's duty of care to the third party must be "independent of the duties the agent owes the principal." *Id.* cmt. b.

¶ 24    To prevail on a claim of participating agent liability against Henkel, the Plaintiffs needed to prove that Henkel owed a duty of care separate from that owed to Bluewater. The Plaintiffs

claimed that Henkel owed Decedent a duty to provide safe working conditions. Plaintiffs also contended that Henkel's employer, Bluewater, owed the same duty to Decedent. Therefore, the question remains, if Bluewater had a duty to provide safe working conditions, could it have delegated that duty such that Henkel could be held liable for breach? Upon a detailed analysis of the common law on non-delegable duties, the answer is in the negative.

### (ii) Employer's Duty to Provide a Safe Workplace is Non-delegable.

¶ 25 The Supreme Court has yet to decide whether the Virgin Islands recognizes the common law rule that an employer's duty to provide a safe workplace is non-delegable. *Defoe v. Phillip*, 56 V.I. 109, 132 n.12, *aff'd*, 702 F.3d 735 (3d Cir. 2012) (explaining that "[b]ecause resolution of this issue is not necessary to our decision herein, we express no opinion as to whether the Third Circuit is correct that the duty to provide a safe workplace is a non-delegable duty under Virgin Islands common law"). Accordingly, the Court must conduct a three-step *Banks* analysis to determine whether such a rule is appropriate under Virgin Islands common law. *See Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 979-81 (V.I. 2011). The Court must consider (1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) what is the soundest rule for the Virgin Islands. *Gov't of Virgin Islands v. Connor*, 60 V.I. 597, 603 (V.I. 2014).

### 1. Other Virgin Islands Courts Recognize that the Duty is Non-delegable.

¶ 26 The Court finds that other Virgin Islands courts, as well as the Third Circuit, have adopted the common law rule that the duty to provide a safe workplace is non-delegable. The Territorial Court has found that "any breach of the non-delegable duty to provide a safe work place is exclusively chargeable to the employer." *Nickeo v. Atlantic Tele-Network Co.*, 2003 WL 193435,

*6 (Terr. V.I. 2003) The Court further held that "when an employee, acting within the scope of employment and possessing no further independent duty of care, negligently injures a co-employee, the negligent employee, acting on behalf of the employer *is not* liable under the law of negligence or agency theories." *Id.* at *4 (emphasis in the original). The District Court has similarly held that an employer's duty to provide a safe workplace is non-delegable. *Tavarez v. Klingensmith*, 267 F. Supp. 2d 448 (D.V.I. 2003), *aff'd*, 372 F.3d 188 (3d Cir. 2004). The Court explained that "[b]ecause of the policy reasons favoring workplace safety, the law imposes a legal duty on employers to ensure a safe working environment and safe instrumentalities for their employees, and expressly designates those duties as non-delegable." *Id.* at 453 (citations omitted). Upon appeal, the Third Circuit affirmed the District Court's holding in *Tavarez*, finding that "the employer's non-delegable duty to provide a safe workplace" adheres to the "general principles of agency law." *Tavarez v. Klingensmith*, 372 F.3d 188, 193 (3d Cir. 2004) (citations omitted). Accordingly, this factor weighs in favor of finding that an employer has a non-delegable duty to ensure safe working conditions.

### 2. A Majority of Jurisdictions Hold that the Duty is Non-delegable, and the Agent is Not Liable Unless He Commits an Affirmative Wrongful or Negligent Act.

¶ 27 The Court finds that a majority of other jurisdictions support finding that an employer's or contractor's duty to provide a safe workplace is non-delegable.[10] *See Tyler v. Fuller*, 569 A.2d 764 (N.H. 1990); *Allen v. Kizer*, 740 S.W.2d 137 (Ark. 1987); *Athas v. Hill*, 476 A.2d 710 (Md. 1984); *Greco v. Farago*, 427 A.2d 98 (R.I. 1984); *State ex rel. Badami v. Gaertner*, 630 S.W.2d

---

[10] At least 37 jurisdictions adhere to the common law non-delegable duty rule: Arkansas, California, Florida, Georgia, Hawaii, Idaho, Illinois, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Hampshire, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and Puerto Rico.

175 (Mo. App. 1982); *Gillette v. Grand Trunk Western Ry. Co.*, 158 N.W. 111 (Mich. 1916); *Waste Management Inc. v. Superior Court*, 119 Cal. App. 4th 105 (4th Dist. 2004); *Drake v. Wilson N. Jones Medical Center*, 259 S.W.3d 386 (Tex. App. 2008); *Haynie v. Haynie*, 426 P.2d 717 (Okla. 1966); *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 D.P.R. 115 (D.P.R. 1992); *Streeter v. Sullivan*, 509 So. 2d 268 (Fla. 1987); *Pardue v. Ruiz*, 429 S.E.2d 912 (Ga. 1993); *Iddings v. Mee-Lee*, 919 P.2d 263 (Haw. 1996); *Wasley v. Kosmatka*, 184 N.W.2d 821 (Wis. 1971); *Haworth v. State*, 592 P.2d 820, 823 (Haw. 1979); *Warner v. Pittsburgh-Idaho Co.*, 220 P. 492 (Idaho 1923); *Pempek v. Silliker Lab'ys, Inc.*, 723 N.E.2d 803 (Ill. App. 1999); *Chesapeake & O. Ry. Co. v. Marcum*, 124 S.W. 293 (Ky. 1910); *Trask v. Hallowell Granite Works*, 76 A. 919 (Me. 1910); *Ryan v. Gray*, 55 N.E.2d 700 (Mass. 1944); *Stringer v. Minnesota Vikings Football Club, LLC*, 686 N.W.2d 545 (Minn. Ct. App. 2004); *Green v. Allendale Planting Co.*, 954 So. 2d 1032 (Miss. 2007); *Olson v. Shumaker Trucking & Excavating Contractors, Inc.*, 196 P.3d 1265 (Mont. 2008); *Poos v. Fred Krug Brewing Co.*, 163 N.W. 840 (Neb. 1917); *Rizzuto v. L.A. Wenger Contracting Co.*, 91 N.Y.2d 343, 693 N.E.2d 1068 (1998); *Spaulding v. Honeywell Int'l, Inc.*, 646 S.E.2d 645 (N.C. 2007); *Johansen v. Anderson*, 555 N.W.2d 588 (N.D. 1996); *Curless v. Lathrop Co.*, 583 N.E.2d 1367 (Ohio 1989); *Yeatts v. Polygon Nw. Co.*, 496 P.3d 1060 (Or. 2021); *Venzel v. Valley Camp Coal Co.*, 156 A. 240 (Pa. 1931); *Simmons v. Tuomey Reg'l Med. Ctr.*, 533 S.E.2d 312 (S.C. 2000); *Smith v. Community Co-op. Ass'n of Murdo*, 209 N.W.2d 891 (S.D. 1973); *Dempsey v. Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers*, 1998 WL 254017 (Tenn. Ct. App. 1998); *Colonna Shipyard v. Dunn*, 151 Va. 740, 145 S.E. 342 (Va. 1928); *Farias v. Port Blakely Co.*, 512 P.3d 574 (Wash. App. 2022); *Miller v. Berkeley Limestone Co.*, 75 S.E. 70 (W. Va. 1912); *Foote v. Simek*, 139 P.3d 455 (Wyo. 2006). Thus, courts generally hold that an employee or corporate

officer is not liable for failure to carry out the employer's delegated duty to provide a safe workplace. *See Simmons v. Tuomey Reg'l. Med. Ctr.*, 498 S.E.2d 408, 412 (S.C. Ct. App. 1998) ("The real effect of finding a duty to be nondelegable is to render not the duty, but the liability, not delegable.").

¶ 28    However, the Court also found a minority of jurisdictions that have strayed from the general non-delegation rule. Regarding the duty to provide a safe workplace, the Kansas Supreme Court held that "what is prohibited is the delegation of ultimate responsibility, not the delegation of the task. The one who assumes performance of the task assumes as well the burden of performing the task satisfactorily." *Smith v. Massey-Ferguson, Inc.*, 883 P.2d 1120, 1135 (Kan. 1994). The Court concluded that the "trier of fact may apportion their fault." *Id.* Similarly, the Alabama Supreme Court found that a "co-employee is not liable to another employee [for failure to provide a safe workplace] unless he (1) voluntarily assumed or (2) was delegated his *employer's* duty to provide a reasonably safe workplace." *Harris v. Hand*, 530 So. 2d 191 (Ala. 1988) (emphasis in original). However, the Court underscored that the plaintiff must "prove with specificity" that the employee breached said duty and that "*[t]he position he occupies, without more, cannot serve as a basis for a co-employee's liability.*" *Id.* (quoting *Fireman's Fund American Insurance Co. v. Coleman*, 394 So.2d 334, 347 (Ala. 1980) (emphasis in original). Alternatively, the Iowa Supreme Court took a different approach, ignoring the non-delegation rule and finding that an "employee has a duty of reasonable care toward coemployees whether any delegation of safety responsibility has occurred or not." *Pease v. Zazza*, 295 N.W.2d 43, 46 (Iowa 1980). Iowa's approach appears to be an outlier.

¶ 29    Nevertheless, some courts that adhere to the general rule of non-delegation have recognized an exception where an agent employee personally committed an affirmative act that increased the risk of injury to a co-employee. Such an intentional act goes beyond mere failure to provide safe working conditions. The Wisconsin Supreme Court considered "[u]nder what circumstances can a duty be owed to a fellow employee additional to and different from the duty of proper supervision that is owed to the employer by a corporate officer or supervisory employee." *Kruse v. Schieve*, 213 N.W.2d 64, 67 (Wis. 1973). The Court responded that "something extra is needed over and beyond the duty owed the employer." *Id.* The Court explained that an employee who commits an affirmative act of negligence goes beyond the scope of an employer's non-delegable duty to provide a safe workplace. *See Id.* at 68 (citation omitted). Accordingly, "[i]f a corporate officer or supervisor engages in this affirmative act, he owes the involved employee a duty to exercise ordinary care under the circumstances." *Lupovici v. Hunzinger Const. Co.*, 255 N.W.2d 590, 592 (Wis. 1977). By way of example, the Wisconsin Supreme Court highlighted that, under the exception, a company president was liable for negligently "directing a particular employee to operate a particular machine in a particular manner." *Kruse*, 213 N.W.2d at 68. (citing *Hoeverman v. Feldman*, 265 N.W. 580 (Wis. 1936)). However, a supervisor employee could not be held liable for, among other things, failing to provide better lighting where an employee's accident occurred, because the failure to act does not go beyond the "employer's nondelegable duty to provide a safe place of employment." *Lupovici*, 255 N.W.2d at 593.

¶ 30    Other courts have similarly adopted the exception outlined in *Kruse. See Raulerson v. Roehr*, 511 So. 2d 1027, 1029 (Fla. Dist. Ct. App. 1987) ("[A] corporate officer becomes amenable to suit as a co-employee when he commits an affirmative act of negligence which goes beyond the

scope of the nondelegable duty of the employer to provide his employees with a safe place to work."); *Hastings v. Mechalske*, 650 A.2d 274, 281 (Md. 1994) (finding that a foreman superintendent was not personally liable because he "did not commit an affirmative direct act of negligence"); *Stringer*, 686 N.W.2d at 550 ("The acts of negligence for which a co-employee may be held liable must be acts constituting direct negligence toward the plaintiff, tortious acts in which he participated, or which he specifically directed others to do."); *Iddings v. Mee-Lee*, 919 P.2d 263, 280 (Haw. 1996) ("[A] supervisory employee is immune from suits based on the negligent breach of a duty in the course of his or her employment absent "something extra"— that is, wilful and wanton misconduct."); *Greco*, 477 A.2d at 100 (emphasizing that "[t]here is a sound policy rationale behind a theory that allows suits only against those [agents] who do more than fail to provide a safe place to work"). In other words, an employee's personal duty of care for a co-employee arises when, like any ordinary person, the employee "knows of another's distress and takes charge of or controls the circumstances." *Stringer*, 686 N.W.2d at 551. Thus, a review of other jurisdictions' cases suggests that, although an employer's duty to provide a safe work environment is non-delegable, employees' immunity from liability is not boundless.

### 3. The Soundest Rule for the Virgin Islands: an Employer's Duty to Provide a Safe Workplace is Non-delegable; the Agent is Only Liable for Affirmative Acts.

¶ 31    Upon review of case law from local Virgin Islands courts and other jurisdictions, the Court finds that the soundest rule for the Virgin Islands is that an employer's duty to provide a safe workplace is non-delegable, and an employee who has been delegated or voluntarily assumed the employer's duty may be held liable only if the agent engaged in direct, affirmative wrongful or negligent acts. This rule supports the standard set by our local courts and most jurisdictions

favoring non-liability for agents, while also balancing an injured plaintiff's interest in holding a co-employee responsible for personal torts.

¶ 32    On the one hand, the Court recognizes the importance of upholding the general rule that an employer's duty to provide safe working conditions is non-delegable. Primarily, the Court is concerned about the possibility of an employer offsetting its liability partially or completely by delegating its safety duty to a supervising employee. This would result in injustices for the agent employee, as well as the injured victim. Additionally, finding the duty delegable would lead to unwanted practical concerns. As the Territorial Court explained,

> [E]mployers often call upon employees to make safety decisions that affect the well being of literally hundreds of co-employees and involve the use of extremely dangerous things . . . .. If an employee who makes safety decisions were personally liable to co-employees for such decisions, the liability could be potentially enormous. Rational employees would pause before subjecting themselves to such massive personal liability.

*Nickeo*, 2003 WL 193435 at *5.

¶ 33    Another concern is that employers would have to incur an additional cost by purchasing personal liability insurance for the safety supervisors. As a result, "employers would have to purchase two policies for its employees: one policy for the employer itself under the workers' compensation scheme, and one policy to personally indemnify its employees for safety decisions they make on the employer's behalf." *Id.* This would, therefore, "defeat the 'compromise' created by the workers' compensation scheme," in which employers agreed to pay compensation for injured employees, circumventing costly damage awards in a tort action. *Id.* Moreover, the Court is concerned that to hold otherwise would open the flood gates to "a torrent of common-law suits accompanying all workers' compensation claims," while setting the "Virgin Islands firmly in the backwaters of American law." *Id.*

¶ 34    However, on the other hand, the Court seeks to balance the positive consequences of upholding a non-delegation duty rule with the negatives. As the Hawaii Supreme Court acknowledged, complete adherence to the rule "may lead to disturbing results." *Iddings v. Mee-Lee*, 919 P.2d 263, 282 (Haw. 1996). Under the rule, a supervisor who has been delegated or assumed the employer's duty to provide a safe workplace "would be absolutely immune from any suit... no matter how intentional, wilful, malicious, culpable, or wanton [] the employee's breach of the duty." *Id.* To account for circumstances where the supervisor intentionally engaged in conduct that caused injury to an employee, the rule must provide for recourse where an employee commits a direct and affirmative act that proximately causes injury to the plaintiff. If, however, the agent merely had the task of supervising workplace safety, the agent cannot be held liable without more direct involvement.

### (iii)    Henkel is Not Personally Liable.

¶ 35    In the instant case, Bluewater had a non-delegable duty to provide a safe workplace to Decedent, and, therefore, Henkel cannot be held personally liable, absent an affirmative act of negligence. The Court shall review whether "a reasonable jury would not have a legally sufficient evidentiary basis to find" Henkel liable. V.I. R. Civ. P. 50(a)(1). Furthermore, the Court "should review the record as a whole and must refrain from weighing the evidence, determining the credibility of the witnesses, or substituting its own version of the facts for that of the jury." *Lembach*, 2015 WL 2120508 at *2 (citation omitted). The Court must also "view[] the evidence in the light most favorable to the nonmovant." *Id.* (citation omitted).

¶ 36    At trial, the Court instructed the jury on Plaintiffs' claim of participating agent liability, which permitted the jury to find Defendant Henkel liable for breaching a duty of care "by

participating in or encouraging unsafe conditions that proximately caused [Decedent's] death."[11] Plaintiffs, therefore, had the burden of proving that Henkel owed a duty of care to Decedent. The employer, Bluewater, had a common law duty to provide a safe workplace for its employees. The record shows that Bluewater, like other corporations, "act[s] through human agents and thus can only implement safety measures by and through their human agents." *Nickeo,* 2003 WL 193435 at *5. As the company's president, Henkel, has supervisory responsibility for workplace safety. However, his position and responsibilities do not make him necessarily or automatically liable for Decedent's death.

¶ 37    Upon *Banks* analysis, this Court has determined that the best rule for the Virgin Islands is one which adopts the majority approach that an employer's duty to provide a safe work environment is non-delegable. Therefore, generally, agency law bars personal liability on the basis that the agent delegated the duty failed to maintain a safe workplace on behalf of the employer. *See Simmons,* 498 S.E.2d at 412 ("The real effect of finding a duty to be nondelegable is to render not the duty, but the liability, not delegable."). However, the agent may be held personally liable where he committed direct, intentional, affirmative negligent acts, which go beyond the scope of the duty to provide safe work conditions. *See Kruse,* 213 N.W.2d at 68. Thus, the agent is charged with owing an independent, reasonable duty of care, distinct from the non-delegable duty owed to the employer. *See Leitch,* 935 S.W.2d at 117 ("[I]ndividual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty.") (citations omitted); *Lupovici,* 255 N.W.2d at 592 ("[I]f a corporate officer or supervisor

---

[11] Plfs.' Resp. to Defs.' Rule 50/59 Mot.

engages in this affirmative act, he owes the involved employee a duty to exercise ordinary care under the circumstances.").

¶ 38    Here, the record shows that Henkel did not affirmatively act beyond the duty to provide a safe workplace, such that he breached an independent duty of care to Decedent. At trial, Henkel confirmed that, as president, he had ultimate "responsibility for Bluewater safety failures" but would "hire other people to enforce" training and inspecting.[12] Thus, any supervisory role Henkel played was administrative in nature as he was "rarely"[13] present in person, directly overseeing the construction; indeed, Henkel was not present at the time of Decedent's death. Significantly, the allegations and evidence brought against Henkel were the same as those against Bluewater: Defendants failed to provide safe work conditions through, primarily, (1) a faulty Forklift vehicle, which lacked a door and manual, (2) lack of enforcement of operators wearing seatbelts, and (3) lack of proper vehicle operation training and safety inspections. However, Bluewater, not Henkel, is the purchaser and owner of the forklift – any negligence, therefore, rests upon Bluewater alone. In addition, Plaintiffs did not present evidence that Henkel himself directed or affirmatively authorized employees not to wear seatbelts. Henkel testified that he did not know if seatbelts were enforced or if Decedent was wearing his seatbelt when the accident occurred.[14] Similarly, any failure to properly train Decedent to use the Forklift or to conduct sufficient inspections lacks the necessary affirmative act, exceeding the duty to provide a safe workplace. In other words, Henkel only failed to act. Thus, there is insufficient evidence from which a jury could find that Henkel engaged in affirmative negligent acts that increased the risk of Decedent's accident. Ultimately,

---

[12] Henkel Test. 66:22-24; 64:10-12.
[13] Henkel Test. 61:13-16.
[14] *Id.* at 61:21-25; 62:1-13.

Plaintiffs failed to distinguish between Bluewater's and Henkel's breach of care to Decedent. Henkel did not breach an independent duty, separate from and beyond the duty owed to his employer to provide a safe workplace. Accordingly, the evidence is such that "reasonable men could not arrive at a contrary verdict." *Cherubin*, 70 V.I. at 564 (quoting *Hunter*, 70 F.3d at 808). Thus, the jury could only find Henkel liable as a participating agent if the evidence showed that Henkel engaged in intentional affirmative acts of negligence, apart from the duty to provide safe work conditions. Therefore, the Court shall grant Defendants' Motion for Judgment as a Matter of Law as to Henkel, dismissing him as a party.

### C. Improper Jury Instruction: Comparative Negligence

¶ 39 Defendants assert that the Court "improperly delivered an ultimate outcome charge to the jury, informing it of the legal effect of its findings as to percentages of negligence and thus unduly prejudicing the jury's verdict."[15] Defendants, therefore, request a new trial based, essentially, on excessive damages. *See* V.I. R. Civ. P. 59(a)(1). The Court disagrees, finding that the best rule for the Virgin Islands is the "sunshine rule," which properly instructs the jury on the law regarding modified comparative fault allocation, instead of the "blindfold rule," which conceals the legal consequence.[16]

#### (i)    Applicable Law

¶ 40 As the Supreme Court has yet to determine the validity of a comparative fault instruction, the Court must conduct a *Banks* analysis to decide the soundest rule for the Virgin Islands. *See Banks*, 55 V.I. at 979-81. The Court shall consider (1) whether any Virgin Islands courts have

---

[15] Defs.' Mot. for JMOL and New Trial at 9.
[16] *See generally* Eli K. Best & John J. Donohue III, *Jury Nullification in Modified Comparative negligence Regimes*, 79 U. Chi. L. Rev. 945 (2012).

previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) what is the soundest rule for the Virgin Islands. *Connor*, 60 V.I. at 603.

### 1. At Least One Virgin Islands Court Applied the Sunshine Rule.

¶ 41    The Court found scarce authority on the subject of a comparative fault jury instruction in the Virgin Islands, identifying only one pertinent, unpublished opinion from the District Court. In *Damidaux v. Hess Oil Virgin Islands Corp.*, 981 WL 704991, *5 (D.V.I. 1981), the District Court instructed the jury on comparative fault as outlined in 5 V.I.C. § 1451. Specifically, the Court explained in the verdict form "that plaintiff would not recover if his negligence were 51 percent or greater." *Id.* The Court reasoned that the jury instruction was "necessary to fulfill the instructions of 5 V.I.C. § 1451 and to guarantee that the verdict was consistent with that statute." *Id.* Thus, at least one local court has held that it is not unduly prejudicial to instruct the jury on the legal effect of comparative negligence.

### 2. The Majority of Other Jurisdictions Apply the Sunshine Rule.

¶ 42    Most jurisdictions follow the "sunshine rule," instructing the jury about the legal consequence of comparative fault allocation, including the consequence of finding the plaintiff more than 50% at fault; some jurisdictions permit the instruction within the presiding judge's discretion.[17] *See Loup-Miller v. Brauer & Assoc.-Rocky Mountain, Inc.*, 572 P.2d 845, 847 (Colo. App. 1977) (holding that the trial court must "give instructions that apprise the jury on the effects of its findings"); Conn. Gen. Stat. Ann. § 52-572h(e) (stating that the jury instructions "shall include an explanation of the effect on awards and liabilities of the percentage of negligence");

---

[17] At least 28 jurisdictions apply the sunshine rule, including the following: Colorado, Connecticut, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Massachusetts, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, North Dakota, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, West Virginia, and Wyoming.

*Booth v. Brewster*, 734 S.E.2d 106, 108 (Ga. App. 2012) (upholding a trial court's explanation of the effect of plaintiff's negligence in jury instruction); Hawaii Civil Jury Instructions, 1999 edition § 6.4 ("If . . . you find that plaintiff's(s') negligence is more than 50%, the Court will enter judgment for defendant(s) and plaintiff(s) will not recover any damages."); *Seppi v. Betty*, 579 P.2d 683 (Idaho 1978) (Idaho Supreme Court found that trial court did not commit reversible error by informing jury on effect of apportioning 50% or more fault to plaintiff); *Best v Taylor Machine Works*, 689 N.E.2d 1057, 1104 (Ill. 1997) (finding broad tort reform act unconstitutional and holding that the "blindfold" provision is unconstitutional as well because it is unseverable); Ind. Code Ann. §34-51-2-7(b)(2) (stating that unless all the parties agree otherwise, the court shall instruct the jury that "[i]f the percentage of fault of the claimant is greater than fifty percent . . . the jury shall return a verdict for the defendant and no further deliberation of the jury is required"); *Thomas v. Bd. of Twp. Trs. of Salem Twp., Sedgwick Cnty.*, 582 P.2d 271 (Kan. 1978) (Kansas Supreme Court found no error in instructing jury on legal effect of comparative negligence); *Porche v. Gulf Mississippi Marine Corp.*, 390 F. Supp. 624, 632 (E.D. La. 1975) ("[J]ury is entitled to know what effect its decision will have."); *George v. Guerette*, 306 A.2d 138, 144 (Me. 1973) (explaining that, under the state's comparative negligence statute, "the jury must be told that it should give consideration to the relative blame-worthiness of the parties"); Patrick F. Brady and Joseph D. Lipchitz, eds, 1 Massachusetts Superior Court Civil Practice Jury Instructions: Exhibit 2-A at 2-75 (MCLE 2d ed 2008) (instructing juries not to calculate damages if they find that the plaintiff is over 50% responsible); Minn. R. Civ. P. 49.01(b) ("[T]he court shall inform the jury of the effect of its answers to the comparative fault question . . . unless the court is of the opinion that doubtful or unresolved questions of law or complex issues of law or fact are involved . . ."); *Martel*

*v Montana Power Co.*, 752 P2d 140, 145-46 (Mont. 1988) ("Montana juries can and should be trusted with the information about the consequences of their verdict."); *Russell v. Stricker*, 635 N.W.2d 734 (Neb. 2001) ("[I]t is prejudicial error for the trial court to not properly instruct a jury on the effects of its allocation of negligence.") Nev. Rev. Stat. Ann. § 41.141 (1979); *Broughton v. Proulx*, 152 N.H. 549, 880 A.2d 388 (2005) (upholding trial court's comparative negligence instruction); *Roman v Mitchell*, 413 A2d 322, 327 (N.J. 1980) ("[The jury's] deliberations on percentages of negligence will not be had in a vacuum, or possibly based on a mistaken notion of how the statute operates."); *Travelers Cas. Ins. Co. of Am. v. Williams Co. Const.*, 851 N.W.2d 164, 170 (N.D. 2014) (approving the trial court's jury instruction on comparative fault); Ohio Jury Instructions: Civil § 403.01 (instructing the jury to assign percentages of fault and then providing a corresponding framework for assigning damages); *Smith v. Gizzi*, 564 P.2d 1009, 1013 (Ok. 1977) ("The jury not only must know the legal effect of its findings, but must determine the ultimate result."); Or. Rev. Stat. Ann. § 31.605 ("A jury shall be informed of the legal effect of its answer."); *Peair v Home Association of Enola Legion*, 430 A2d 665, 671-72 (Pa. Super. Ct. 1981) ("We . . . conclude[ ] that the jury should be informed of the consequence of its apportionment of negligence."); *Reiland v. Southland Equip. Serv., Inc.*, 500 S.E.2d 145, 157 (S.C. Ct. App. 1998) (finding that trial court "properly charged the jury on the law of comparative negligence"); *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992) ("[T]rial court shall instruct the jury on the effect of the jury's finding as to the percentage of [comparative] negligence."); *Borden, Inc. v Price*, 939 S.W.2d 247, 253-54 (Tex App 1997) (explaining that a jury verdict form may explain the effect of finding a plaintiff "50% or less" negligent); *Dixon v. Stewart*, 658 P.2d 591 (Utah 1982) ("[I]f requested, a trial court must inform the jury of the effect of apportioning to

the plaintiff 50% or more of negligence it finds in a comparative negligence case, if effect of such instruction will not be to confuse or mislead the jury."); *Adkins v. Whitten*, 297 S.E.2d 881, 883 (W. Va. 1982) (rejecting the blindfold rule); Wyo. Stat. Ann. § 1-1-109(b)(iii).[18] Therefore, this factor weighs in favor of allowing the Court to apply the "sunshine rule."

### 3. The Soundest Rule is the Sunshine Rule.

¶ 43    The Court finds that the soundest rule for the Virgin Islands is the "sunshine rule": the Court may, within its discretion, instruct the jury on the legal effect of apportioning fault under the modified comparative negligence regime. The "sunshine rule" is supported by at least one of our local courts and most other jurisdictions. Moreover, public policy supports the rule. Concealing the fact that the plaintiff is barred from any recovery if found more at fault "could conceivably mislead [the jury] into believing that so long as the plaintiff is not 100 percent at fault he would recover some damages." *Adkins*, 297 S.E.2d at 883.. The sunshine rule promotes transparency in jury deliberations. It ensures that deliberations are not conducted in a vacuum or based on a mistaken understanding of the comparative negligence statute. It allows judges to inform juries of the legal consequences of their apportionment of fault, thereby enhancing their ability to fulfill their fact-finding function and render an informed decision. The jury must be fully informed to ensure that mistakes are not made due to confusion about the law. Furthermore, assigning liability is no easy task, particularly in high-stakes, complex cases. Ultimately, the jury is tasked with making difficult moral judgments, which ought not to be made in ignorance of the legal consequences.[19] Additionally, history shows that "the jury has been viewed as an institution of last

---

[18] (citations and internal quotation marks omitted).

[19] Jordan H. Leibman, Robert B. Bennett, Jr., Richard Fetter, Ph.D., *The Rise and Fall and Perhaps Rise Again of the "Blindfold" Rule in Modified Comparative Fault Cases: A Proposed Experiment*, 102 Dick. L. Rev. 33 (1997)

resort insuring that the local community's notions of justice will, if necessary, be applied even in derogation of the law."[20] If the Court were to apply the "blindfold rule," the community's input as to what is fair and just may be unintentionally diminished. Accordingly, the sunshine approach is the best rule for the Virgin Islands because transparency in the law leads to more just and unerring jury verdicts, as well as greater community trust in the judicial system.

### (ii) The Court Correctly Applied the Sunshine Rule; Alternatively, Any Error Was Harmless.

¶ 44    The Court was permitted, within its discretion, to instruct the jury as to the legal effect or ultimate outcome of apportioning fault under the Virgin Islands modified comparative negligence regime. The Court adhered to Section 1451 of the Virgin Islands Code[21] by instructing that the law permits the jury "to determine comparative fault," whereby the jury may consider and apportion the defendant's fault as well as the victim's own negligence.[22] Specifically, the Court explained that the plaintiff's recovery of damages is prevented "only if he is found to be more at fault than the defendants."[23] Under the "sunshine rule," the Court may inform the jury of the legal consequence of apportioning comparative fault in the Virgin Islands. Furthermore, the Court has discretion to issue the instruction in doubtful cases. Accordingly, under the "sunshine rule," the Court's jury instruction was permissible.

---

[20] *Id.*

[21] 5 V.I.C. § 1451(a) provides as follows:

> In any action based upon negligence to recover for injury to person or property, the contributory negligence of the plaintiff shall not bar a recovery, but the damages shall be diminished by the trier of fact in proportion to the amount of negligence attributable to the plaintiff. The burden of proving contributory negligence shall be on the defendant. If such claimant is found by the trier of fact to be more at fault than the defendant, or, in the case of multiple defendants, more at fault than the combined fault of the defendants, the claimant may not recover.

[22] Trial Tr. Vol. V. 178:21-22.
[23] *Id.* at 179:8-9.

¶ 45    Nevertheless, even if the "sunshine rule" does not apply, any error was harmless. *See* V.I. R. Civ. P. 61 ("Unless justice requires otherwise, no . . . error by the court . . . is ground for granting a new trial, for setting aside a verdict, or for vacating modifying, or otherwise disturbing a judgment or order. At every stage of the proceedings, the court must disregard all errors and defects that do not affect any party's substantial rights."). The jury found that Decedent was only 10% at fault. If the ultimate outcome instruction had any prejudicial effect, one would expect the jury to return a percentage of fault closer to 50%. Thus, even if the Court erred by fully informing the jury of the law, the error was harmless, and a new trial is unwarranted.

## D. Specific Sum Demands in Closing Arguments

¶ 46    Defendants argue that "[u]nder Virgin Islands precedent and practice, it is improper for a plaintiff's counsel to suggest specific amounts for general damages such as pain and suffering."[24] The Court disagrees, finding that the soundest rule for the Virgin Islands is one that permits counsel to request specific sum, non-economic damages in closing argument.

### (i)    Applicable Law

¶ 47    The Court must conduct a *Banks* analysis to determine the soundest rule for the Virgin Islands because the Supreme Court has yet to decide the validity of specific sum requests for non-economic damages in closing argument. *See Banks*, 55 V.I. at 979-81. The Court shall consider (1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) what is the soundest rule for the Virgin Islands. *Connor*, 60 V.I. at 603.

### 1.   Some Virgin Islands Courts Have Permitted *Ad Damnum* Arguments in Closing.

---

[24] Defs.' Mot. for JMOL and New Trial at 11.

¶ 48    The Court finds that, in practice, some Virgin Islands courts have allowed *ad damnum* or specific non-economic damage requests in closing argument. The Third Circuit has recognized that Virgin Islands courts have customarily allowed the "troublesome practice" of *ad damnum* arguments during closing. *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 771 (3d Cir. 1987); *see also Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979). For example, in *Herman v. Hess Oil Virgin Islands Corp.*, the District Court found that "the figure that the jury set was close to that suggested by the plaintiff's counsel in final argument." 379 F. Supp. 1268, 1276 (D.V.I. 1974), *aff'd*, 524 F.2d 767 (3d Cir. 1975). However, the Third Circuit later held that *ad damnum* arguments in closing are prohibited under federal law. *See Waldorf v. Shuta*, 896 F.2d 723, 744 (3d Cir. 1990). Adhering to the Third Circuit's holding, the District Court later affirmed that *ad damnum* arguments in closing are "improper." *Warner v. Lawrence*, 754 F. Supp. 449, 458 (D.V.I. 1991). However, the Supreme Court recently discussed the practice occurring at trial in the Superior Court, explaining that counsel made a "specific request" for a lump sum in their closing arguments. *R.J. Reynolds Tobacco Co.*, 76 V.I. at 703. The Supreme Court did not address whether the practice was generally prohibited. Although *ad damnum* arguments in closing are barred at the federal level, they have not been so prohibited in the Virgin Islands.

### 2. Most Jurisdictions Permit *Ad Damnum* Clauses in Closing.

¶ 49    A majority of other jurisdictions allow counsel to request specific non-economic sums in closing arguments. According to a 2017 Washington University Law Review article, at least twenty-four jurisdictions permit *per diem* calculations (explaining to the jury how the suggested

sum was calculated) and lump sum requests for non-economic damages.[25] Additionally, nine states prohibit *per diem* calculations but allow lump sum requests.[26] Only three states outwardly reject any *ad damnum* requests in closing arguments.[27]

¶ 50    The states that permit both *per diem* calculations and lump sum requests in closing believe that the jury will not be unduly swayed by counsel's arguments. *Beagle v. Vasold*, 417 P.2d 673, 679 (Cal. 1966) (finding that the court cannot "conclude as a matter of law that a jury will ignore the court's instructions to award a reasonable amount as compensation for the plaintiff's pain and suffering and that it will inevitably choose an indefensible course of slavishly following counsel's suggestions on damages, merely because he asserts in argument that such compensation should be measured on a 'per diem' basis"). The courts further hold that the "instruction that counsel's arguments are not evidence is sufficient" to counter any undue prejudice. *Debus v. Grand Union Stores of Vt.*, 621 A.2d 1288, 1291 (Vt. 1993); *see also Worsley v. Corcelli*, 377 A.2d 215, 218 (R.I. 1977) (finding that there are sufficient safeguards against excessive verdicts from *per diem* arguments, such as that counsel's arguments are not evidence).

¶ 51    The states that prohibit *per diem* calculations but permit lump sum requests generally hold that *per diem* calculations are unduly prejudicial because the calculated figures manipulate the jury by creating a false sense of mathematical certainty. *See Caley v. Manicke*, 182 N.E.2d 206, 208

---

[25] *See* John Campbell, Bernard Chao, and Christopher Robertson, Time is Money: An Empirical Assessment of Non-Economic Damages Arguments, 95 WASH. U. L. REV. 01, pp. 33-40 (2017), available at: https://openscholarship.wustl.edu/law_lawreview/vol95/iss1/5.
The states and jurisdictions include Alabama, Alaska, California, Colorado, Connecticut, D.C., Florida, Georgia, Hawaii, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Michigan, Minnesota, Mississippi, New Mexico, North Carolina, Ohio, Oregon, Rhode Island, and Vermont.
[26] *Id.* at 40-43. The states include Illinois, Maine, Missouri, New Hampshire, New York, North Dakota, South Carolina, Virginia, and Wisconsin.
[27] *Id.* at 44-45. The states include Delaware, Pennsylvania, and West Virginia.

(Ill. 1962) (finding that *per diem* arguments create "an illusion of certainty" that is not inherent in pain and suffering); *Faught v. Washam*, 329 S.W.2d 588, 603 (Mo. 1959) (*per diem* arguments are "calculated and designed to implant in the jurors' minds definite figures and amount not theretofore in the record (and which otherwise could not get into the record) and to influence the jurors to adopt those figures and amounts in evaluating pain and suffering"); *Duguay v. Gelinas*, 182 A.2d 451, 454 (N.H. 1962) (the mathematical equations "introduce[] an element of apparent precision that is illusory and compounds the dangers of conjecture"). Additionally, the Illinois Supreme Court found that the instruction that counsel's arguments are not evidence is insufficient and "ignores human nature." *Caley*, 182 N.E.2d at 209.

¶ 52    Finally, the few states that affirmatively prohibit both *per diem* calculations and lump sum requests generally find that non-economic damages are mathematically imprecise, and the jury should rely on the evidence, not counsel's speculation. *Henne v. Balick*, 146 A.2d 394, 398 (Del. 1958) (finding that the amount for "pain and suffering shall be determined by the trier of facts based upon the evidence submitted" and not by a *per diem* calculation that is "merely a speculation of counsel . . . unsupported by the evidence"). *Stassun v. Chapin*, 188 A. 111 (Pa. 1936) (holding that specific sum requests are improper because "they tend to instill in the minds of the jury impressions not founded upon the evidence").

### 3.   The Soundest Rule: Permit *Per Diem* Calculations and Lump Sum Requests.

¶ 53    The Court finds that the soundest rule for the Virgin Islands is to permit counsel's *per diem* calculations and specific lump sum requests in closing arguments. Although the Third Circuit has barred *ad damnum* arguments in closing, this Court is not bound by the Third Circuit's decisions

*Banks*, 55 V.I. at 967. In practice, some Virgin Islands courts have allowed specific lump sum requests. Additionally, although 5 V.I.C. § 5 bars *ad damnum* clauses in complaints or cross-complaints, it does not preclude a party from requesting a specific amount of damages from a jury or a judge at trial.[28] Barring *ad damnum* requests at trial would be inconsistent with the statutory law of the Virgin Islands. Furthermore, many jurisdictions permit counsel to request lump sums and disclose to the jury the methodology used to arrive at that figure. A majority find lump sum requests permissible, while a minuscule minority of jurisdictions oppose *ad damnum* clauses altogether. The Court finds the position taken by the majority of the jurisdictions reviewed convincing and further agrees with the many jurisdictions that permit *per diem* calculations.

¶ 54  Counsel's *ad damnum* arguments in closing serve to guide the jury like other arguments made during the trial. As the Court repeatedly stresses throughout, the jury is not to take counsel's arguments as evidence. Ultimately, the jury is capable of determining a fair and reasonable non-economic damages award without being unduly swayed by attorneys' calculations or proposed lump sums. The Court finds that the jury will not "inevitably choose an indefensible course of slavishly following counsel's suggestions on damages, merely because he asserts in argument that such compensation should be measured on a 'per diem' basis." *Beagle v. Vasold*, 417 P.2d 673, 679 (Cal. 1966). Furthermore, the Court agrees with the Supreme Court of Ohio's reasoning for dismissing each argument against permitting *per diem* calculations. *Grossnickle v. Vill. of*

---

[28] Title 5 V.I.C. § 5 provides:

Notwithstanding any provision of law, in any cause of action based on tort, contract law, or otherwise to recover damages for injury or death to the person or for harm to the plaintiff resulting from the defendant's wrongful conduct, no complaint or cross-complaint shall specify the amount of damages but shall contain a prayer for general relief and shall state that the damages are within the jurisdictional limits of the court to which the pleading is addressed. *Nothing in this section shall be construed as preventing a party from asking for a specific amount of damages at the trial.* (emphasis added)

*Germantown*, 209 N.E.2d 442 (Ohio 1965). The Ohio Supreme Court outlined the primary reasons

against *per diem* calculations:

> (1) it displaces the common knowledge and experience possessed by a jury of the nature of pain and suffering, (2) it ignores the fact that pain is generally intermittent, (3) it makes no allowance for a discount for the present use of the total award, and (4) it stretches speculation to absurdity in that pain measured by, for example, a penny a second is equal to $31,536 a year.

*Id.* at 446. The court then "disposed" of each of the arguments against *per diem*:

> (1) The practical fact is that no one intimately experienced with a situation similar to that of the plaintiff in any case would be permitted to sit on a jury; hence, the average juror is unacquainted with the type of pain or suffering which he is called upon to translate into monetary value. (2) Intermittent pain may be, but suffering the loss of a member or of normal activities is continual. (3) An award in gross is never discounted by the court and, if by the jury, the factor used is never disclosed. (4) The absurdity of any hypothesis is fair game for the opposing party.

*Id.* Additionally, the Court's preliminary and jury instructions operate as a safeguard, emphasizing

that the jury is the sole and ultimate decider of the appropriate amount of damages. The Court finds

that the best rule is to allow counsel in closing arguments to request a specific lump sum based on

a *per diem* basis.

**(ii)**      *Ad Damnum* **Requests in Closing are Permissible; Any Error Was Harmless.**

¶ 55     The Court did not err by permitting Plaintiffs' counsel to request specific lump sums for

non-economic damages, including explaining the methodology for the requested figure. In closing

arguments, Plaintiffs' counsel asked the jury to award Decedent a specific amount of damages for

pain and suffering. Counsel explained to the jury how they arrived at the figure, specifically finding

that Decedent was likely alive for approximately fifteen seconds after the accident and suggesting

that the jury should award $200,000.00 for every second of his antemortem suffering, totaling

$3,000,000.00.[29] Counsel similarly requested the jury to award specific sums for Plaintiffs Justin Nigg (loss of parental guidance and emotional damages) and Lorraine Nigg (emotional damages). Upon *Banks* analysis, this Court found that the soundest rule for the Virgin Islands is to permit counsel in closing arguments to request specific lump sums and to explain the basis for the calculations. Accordingly, the Court did not err when it allowed Plaintiffs' counsel to make *ad damnum* arguments in closing. Alternatively, even if *ad damnum* requests in closing were impermissible, the Court committed harmless error. *See* V.I. R. Civ. P. 61. The jury returned a non-economic damages award well below Plaintiffs' counsel's suggested figures ($1,000,000.00). Thus, the record shows that the jury was not unduly influenced by counsel's arguments; rather, the jury came to its own independent conclusion. Therefore, any error was harmless, and a new trial is unwarranted.

## E. Waiver of Expert Testimony Objection

¶ 56    Defendants assert that the Court should grant a new trial because the jury's "award of $657,414 to [Decedent's] estate lacked any factual support," violating Rule 702(a) and (b) of the Virgin Islands Rules of Evidence.[30] The Court finds that Defendants waived their Rule 702[31] objection by failing to properly raise the issue before or during trial.[32] "[T]he Superior Court 'is

---

[29] Trial Tr. Vol. V. at 53:13-25; 54:1-19.

[30] Mot. for JMOL and New Trial at 13.

[31] Rule 702 of the Virgin Islands Rules of Evidence provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

[32] Under Rule 22(m) of the Virgin Islands Rules of Appellate Procedure, a party waives an issue on appeal that was "not raised or objected to before the Superior Court."

not obliged to look into the questions posed by Rule 702 when neither side either requests or assists.'" *Virgin Islands Waste Mgmt. Auth. v. Bovoni Invs., LLC*, 61 V.I. 355, 371 (V.I. 2014) (quoting *Malloy v. Reyes*, 61 V.I. 163, 183 (V.I. 2014)). The Supreme Court explained that this is especially true when the parties clearly knew about the expert's intent to testify and had time to object before or at trial. *See Malloy*, 61 V.I. at 183; *see also Bovoni Invs.*, 61 V.I. at 371 (finding that the defendant "never made a request for a *Daubert* hearing to challenge [the expert's] methodology, despite having been provided with his expert report months before trial").

¶ 57    Here, Defendants failed to properly and timely raise issue with Plaintiffs' expert economic witness, Dr. Volkov. Defendants now claim, post-trial, that Dr. Volkov "did not consider any historical evidence of [Decedent's] actual personal expenditures prior to death, or any evidence that the decedent had, in fact, retained any of his earnings as 'savings' during his lifetime."[33] However, despite understanding Plaintiffs' intent to have Dr. Volkov testify well before trial, Defendants failed to bring a motion objecting to Dr. Volkov's methodology and data as articulated in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). At trial, Defendants failed to object to Dr. Volkov's line of questioning. In fact, during the trial, the Court asked Defendants whether they had any objection to the expert's admissibility, and Defendants responded in the negative. Defendants had ample opportunity to raise issue with Plaintiffs' expert witness, and their failure to do so is fatal, waiving any objection for a new trial as it relates to Dr. Volkov's testimony.

## F. Award for Antemortem Pain and Suffering

¶ 58    Defendants contend that the record does not contain evidence of Decedent suffering any pain before death, and, consequently, the jury's award is barred as a matter of law. The Court

---

[33]Mot. for JMOL and New Trial at 12.

disagrees, finding sufficient evidence of antemortem pain and suffering. The Court may only grant a motion for judgment as a matter of law when "viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could have drawn its findings." *Lembach*, 2015 WL 2120508 at *2 (citation omitted). The Court "should review the record as a whole and must refrain from weighing the evidence, determining the credibility of the witnesses, or substituting its own version of the facts for that of the jury." *Id.* (citations and internal quotation marks omitted)

¶ 59    The record contains sufficient evidence of Decedent suffering pain before death. Defendants assert that "Plaintiffs offered no forensic medical testimony respecting whether [Decedent] was conscious immediately following his ejection from or abandonment of the forklift at the time of the accident."[34] However, Plaintiffs were not required to provide forensic medical testimony, nor was such evidence necessary to meet their burden in this case. Emotional testimony from eyewitness co-worker, Lopez, supports finding that Decedent was alive for a period after the Forklift fell on him. Lopez testified that he saw Decedent's hand move up towards him and that, in response, Lopez told Decedent that everything was going to be okay.[35] Accordingly, there is sufficient evidence upon which a jury could reasonably find that Decedent was alive and suffered pain shortly before his death.

### G. Excessive Non-economic Damages Awards

¶ 60    Lastly, Defendants assert that the jury's general damages awards for Plaintiffs were excessive, warranting a new trial. The Court disagrees, finding that the jury's awards were within

---

[34] Id. at 13.
[35] Trial Tr. Vol. III at 208:16-21.

its sound discretion and supported by the evidence. The Court may grant a new trial based on excessive damages where: (1) "the evidence before the trial court is insufficient to support the jury's damages award," or (2) "the damages awarded by the jury are so excessive as to violate the Due Process Clause of the Fifth or Fourteenth Amendments to the United States Constitution." *R.J. Reynolds Tobacco Co.*, 76 V.I. at 694 (quoting *Antilles*, 64 V.I. at 438); *see* V.I. R. Civ. P. 59(a)(1)(A)(iv). Though "[t]here must be a rational relationship between the specific injury sustained and the amount awarded," *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 774 (3d Cir. 1987), "awards for pain and suffering are highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms." *Cherubin v. LIAT (1974), Ltd.*, 70 V.I. 558, 572 (V.I. Super. Ct. 2019), *aff'd*, 77 V.I. 472 (V.I. 2022) (quoting *Eich v. Board of Regents for Cent. Missouri State Univ.*, 350 F. 3d. 752, 763 (8th Cir. 2004)).

¶ 61    The jury's non-economic damage awards were based on sufficient evidence and were within the jury's sound discretion. The jury awarded Decedent $1,000,000.00 for pain and suffering, Justin $4,000,000.00 for emotional distress, loss of companionship, and loss of parental guidance, and Lorraine $2,000,000.00 for emotional distress and loss of companionship.[36] Regarding Decedent's pain and suffering, there was sufficient evidence that Decedent was alive for a period before dying under the weight of the Forklift. The suffering caused by Decedent's fatal accident is unimaginable, let alone calculable by any objective means. Thus, it was well within the jury's discretion to award the amount it did for Decedent. Concerning Decedent's son, Justin, the jury's award was more sizable, but nonetheless, supported by the weight of the evidence.

---

[36] *See* Jury Verdict Form.

Justin testified that his father was a supportive mentor who guided him throughout his life, stating "[t]here is not a day that I do not think about him."[37] The evidence shows that Justin's father was a "priority in his life."[38] The loss of a father is tremendous and incalculable. Therefore, the jury had discretion to award Justin damages to compensate for not only emotional harm, but also the long-lasting loss of parental guidance and companionship that accompanies losing a parent. Lastly, Decedent's mother, Lorraine, is similarly owed emotional damages for the incalculable loss of her son. Lorraine explained that the feeling of losing her son "doesn't go away" and that losing a child is "horrible" and different from other types of losses, explaining that the "saying, 'you should never outlive your children' is the truth."[39] The record further shows that Decedent was a constant in Lorraine's life. She stated that she "could always pick up the phone and call him" about various problems or questions.[40] Lorraine identified her son as "kind of my best friend."[41] Accordingly, the Court finds that the jury's award for Lorraine was not so excessive as to exceed "even the outermost limits of the range of reasonable and acceptable verdicts." *Gumbs*, 823 F.2d at 774. Thus, a new trial based on excessive non-economic damages is unwarranted.

## IV.   CONCLUSION

¶ 62    Defendants' Motion for a New Trial is denied. The Court did not commit plain error when it instructed the jury on the law governing "covered employer" status under the Virgin Islands Workers' Compensation Act. The Court did not err by instructing the jury of the ultimate legal effect of comparative fault allocation or by permitting Plaintiffs to request specific sums for non-

---

[37] Trial Tr. Vol. III at 121:24-25; 122:1-17.
[38] *Id.* at 121:11-15.
[39] *Id.* 163:4-12.
[40] *Id.* at 163:22-25.
[41] *Id.* at 154:2-3.

economic damages. The Court further finds that the jury's non-economic damage awards were supported by the evidence and made within the jury's sound discretion.

¶ 63    In addition, the Court finds that the Defendants' Renewed Motion for Judgment as a Matter of Law is granted, in part, and denied, in part. The record contains sufficient evidence for a jury to find that there was a substantial increase in payroll, such that Bluewater was required to file a supplementary statement and pay additional premiums. Bluewater's failure to do so resulted in the loss of "covered employer" status, permitting this ensuing lawsuit. The record also contains sufficient evidence that Decedent was alive for a period before death, permitting the jury to award damages for pain and suffering. However, the record does not support finding that Defendant Henkel is personally liable under a claim of participating agent liability or otherwise. The soundest rule for the Virgin Islands is that an employer's duty to provide a safe workplace is non-delegable, and an employee who has been delegated or voluntarily assumed the employer's duty may be held liable only if the agent engaged in direct, affirmative, or intentional act. Plaintiffs failed to prove that Henkel, as agent of Bluewater, committed affirmative negligent acts, such that he personally breached an independent duty owed to the Decedent. Accordingly, the Court being satisfied in its premises, it is hereby

**ORDERED** that Defendants Bluewater Construction Inc.'s and Jeremy Henkel's Motion for a New Trial is **DENIED**; and it is further

**ORDERED** that Defendants' Renewed Motion for Judgment as a Matter of Law is **GRANTED, in part, and DENIED, in part**; and it is further

**ORDERED** that Plaintiffs' claims against Defendant Jeremy Henkel are **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that a copy of this Memorandum Opinion and Order shall be distributed to the

counsel of record.

Dated: July 18, 2025

**CAROL THOMAS JACOBS**
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court

By: _____
Latoya Camacho
Court Clerk Supervisor  7 /18/ 2025